Campbell, J.:
Woodin recovered judgment in the Isabella circuit court against Hall for the value of. thirty-eight floods alleged to have been raised for the latter to aid in the floatage of logs on Chippewa river. Woodin was a mill-owner on the stream, and the amount recovered was what was found hy the jury to have been the value of the use of'his dam^for raising the water and flooding the run of logs. The declaration contained a statement in a special count claiming to recover for thirty-four floods. It had also appended the common counts. It was objected that no more could be charged for under the common counts than were set forth specially.
*67 This,' we think, is not so. The common counts are independent of the special count. It was competent for the defendant below to demand a bill of particulars, and so to learn the entire extent of the plaintiff’s demand. But without such demand, he must be prepared to meet any case admissible under the common counts as if there had been no special count.
The main questions arise concerning the responsibility of Hall for floods not furnished for his own benefit. It appears *that in the early part of April, 1872, Hall was running a quantity of his own logs, which required help of more water to float them over some difficult places. Later, and in May and June, the logs below Woodin’s dam were in charge of other persons, and belonged to a large number of interests. These all received the benefit of the principal part of the floodings. The testimony tended to show that early in April, when Hall’s logs were stopped, he applied to Woodin, informing him of that fact, and desired him to furnish floods until directed to stop. Woodin furnished four, and then stopped, and no more were raised until after an interval of some weeks, and after Hall’s separate drives had gone forward and the stream was occupied by others. It was testified (but not without contradiction), that Hall and one of the persons in charge of the later drives after the first floods, but at what precise time does not appear, went to Woodin, who gives this account of it: “Defendant told me the drive had to have the water, and he told me to let the floods come and he presumed the Saginaw lumbermen would see me good; and he said, ‘keep on the floods and I will see you paid.’ ” The language is again given by Woodin as follows: “Defendant said at that time that the drive would want my water, and the lumbermen would pay me; * at least I will see you paid.’ ” Hall afterwards met the lumbermen and they settled with him ratably on the basis of three hundred dollars; but Woodin claimed more, and sued Hall personally. There was conflicting testimony concerning several matters.
Upon the first four floods no controversy was made. ■ The court, under exception, charged for the plaintiff, upon the rest, as follows: “If the jury find that Mr. Hall, at the time he and *68 Dunning called on Woodin for floods, he, Hall, agreed to pay for them, that he is liable for all floods after that date under the common counts.”
There was no ground for holding him liable for these under the special count, as that was confined to floods furnished for
Hall’s own logs.
^This charge as given assumed that the evidence made out an absolute and original promise to pay, and not one by way of guaranty. No doubt such a promise might be made, where the contract was understood to be Hall’s own independent promise. But the promise, as detailed by the plaintiff, pointed to the lumbermen as those who were expected to pay, and showed them to have been the persons benefited. The promise of Hall was not an original promise in this point of view, but a collateral one, which was to make good the obligation of the lumbermen. There was other testimony, still more positive concerning the collateral character of the undertaking. The court had no right to declare the promise, if made, to have been binding in such a way as to make him primarily liable, which was the effect of the charge given, inasmuch as the agreement, if made, was verbal.
We think, also, that there was no foundation in the testimony for any claim that the subsequent floods could properly be attributed to the original contract. The floods called for by that were for an immediate purpose, and to continue until ordered to stop. But a stoppage of several weeks was a practical discontinuance,' and after such a stoppage nothing but a new order would justify renewal. The original necessity had passed, and Hall could not fairly have been expected to anticipate further floods after that interval. The later services, whether procured by him or not, were distinct.
There were some other questions which on a future trial will probably be presented with less complications, and which we pass over.
The judgment must be reversed, with costs, and a new trial granted.
The other justices concurred.