WILLIAM GRANT and another *vs.* JOHN S. WOLF and others.

July 15, 1885.

**Statute of Frauds—Original Undertaking.**—Upon the facts appearing in this case, the promise of the defendants to plaintiffs "*to see them paid*" for boarding hands in the employ of defendants' subcontractors, is held to be original, and not collateral to the agreement of another, and therefore not within the statute of frauds.

**Excessive Verdict—Remission of Part.**—The fact that a verdict is for too large an amount, and that it is allowed to stand only upon the remission of the erroneous excess, at the suggestion of the trial court, does not necessarily show that the jury were actuated by passion or prejudice in arriving at it.

Plaintiffs brought this action in the district court for St. Louis county, to recover $1,850, on the cause of action stated in the opinion. At the trial before *Stearns*, J., and a jury, plaintiffs had a ver-

dict for $1,737.96. Defendants having moved for a new trial, the court ordered that a new trial be had unless the plaintiffs should remit from the verdict all in excess of $1,505.80, but that, on plaintiffs making such remission, no new trial should be had. The plaintiffs made the remission, and the defendants appeal from the order.

*Ensign & Cash*, for appellants.

*White & Reynolds*, for respondents.

BERRY, J. Upon the plaintiffs' theory of the character of their alleged cause of action, and of the tendency and effect of the evidence by which it is sought to be sustained, (and we think their theory is the right one,) this case presents but very little difficulty. The defendants had entered into a contract with the Duluth & Iron Range Railroad Company for the construction of a portion of its railroad, and had sublet a certain "section" of that portion to the firm of Somerville & Cameron, as subcontractors. It appeared from the defendants' own testimony that they were bound by their contract with the railroad company to see that the laborers on the work were paid, and the company saved harmless from the liability imposed upon it by Gen. St. 1878, c. 34, §§ 89, 90. Somerville & Cameron had asked the plaintiffs to open a boarding-house near their "section," where the laborers employed by them could get board. There is no evidence that plaintiffs concluded any agreement with Somerville & Cameron to board their hands for them; but, without any such agreement, and without any bargain with the laborers themselves, so far as appears, the plaintiffs called upon the principal contractors—the defendants—to inquire whether *they* would be responsible for the board of the laborers; and, upon being assured that they would be, or that they would, in the language of the testimony, "see them [the plaintiffs] paid" for such board, plaintiffs proceeded to furnish the board to recover the price of which this action is brought.

Now, upon this theory, it is clear that the responsibility assumed by the defendants was original, and not collateral to the agreement of another, and therefore not within the statute of frauds. Upon this theory, the words "see them paid" are not an agreement on the part of the defendants to see that some one else pays the plaintiffs, but to pay them themselves. For, although ordinarily, and standing

v.34m—3

alone, these words import a collateral agreement; yet, like other words, they are to be construed with reference to the connection in which they occur, and the facts accompanying or surrounding their utterance. The fact that defendants were in the habit of keeping back and retaining out of the estimates earned by Somerville & Cameron the price of the board furnished their laborers by the plaintiffs, goes far to confirm the plaintiffs' theory both of the facts and the law of this case. Even if it were assumed that the contract for board was with the laborers in the first instance, so that the defendants' agreement "to see" plaintiffs paid was an agreement to see that the laborers paid them, we are not by any means prepared to say that a recovery might not have been had upon the other theory broached by plaintiffs, viz., that the defendants held funds in their hands which, in contemplation of law, had been placed there by the laborers for the purpose of paying, and with which to pay, the board in question. *Sanders* v. *Clason*, 13 Minn. 352, (379.) But we need not resort to this theory, as the other sufficiently disposes of the case.

It follows from what we have said that the trial court properly refused the instruction requested by defendants, as not applicable to the evidence in the case; also that it properly instructed the jury that if the defendants made the promise to pay the board as claimed by plaintiffs, then the latter were entitled to recover.

Upon a motion for a new trial, the trial court being of opinion that the jury had erroneously included in their verdict items to the amount of $232.16 which were claimed by the plaintiffs, that sum was remitted from the verdict, and thereupon the motion denied.

Defendants insist that the evidence did not justify any verdict against them, and that, if it did, the fact that the jury unwarrantably included the sum of $232.16 in their verdict, shows that they were actuated by passion and prejudice, and that therefore their verdict ought to be set aside. The testimony was squarely contradictory; the promise sued upon being positively sworn to on the part of the plaintiffs, and as positively denied on the part of the defendants. This left the truth of the matter to be ascertained by the jury in the ordinary exercise of their undoubted right to decide controverted questions of fact. There is nothing in this case to distinguish it from

many others in which the testimony is irreconcilable, nor from others in which the trial court, deeming a verdict excessive, has considered that it ought to stand when the excess is remitted. See *Craig* v. *Cook,* 28 Minn. 232.

Order affirmed.