46  257
47  145
47  264

46  257
55  775

J. W. WEST, MRS. W. H. WIGGS, A. P. MALLOY, J. T. PEA- COCK, A. A. KEEFE and W. J. KELLY, AS PARTNERS DOING BUSINESS UNDER THE FIRM NAME OF WEST, WIGGS & COMPANY, *Plaintiffs in Error*, v. JOHN M. GRAINGER, AS ADMINISTRATOR OF THE ESTATE OF JOHN F. GRAINGER, DECEASED, *Defendant in Error*.

1. Under Revised Statutes, sections 1004 and 1744, as amended by chapter 4582, approved June 2, 1897, it is permissible in a common law action to join with a special count seeking to enforce an alleged lien for labor common counts for work done and materials furnished, and upon accounts stated.

2. Where a declaration contains a special count seeking enforce- ment of an alleged lien and also complete common counts for work done and materials furnished and upon account stated, with other allegations following the common counts applicable to the matters set up in the special count alone, and the defendant demurs to the whole declaration, and also to every part thereof except the common counts, and the court overrules the demur- rer to the whole declaration, but sustains it as to the stated portions, it is not error for the court to require the defendant to plead to the common counts without requiring plaintiff to first amend his declaration by striking the matter held bad on demurrer.

3. G. was continuously employed by B. from January, 1893, until August, 1898, as general overseer in the latter's turpentine busi- ness, and allowed the money due him for services to accumulate until he ceased work, when there was a large balance due him. W., W. & Co. in 1896 purchased certain notes and a mortgage held by one McC. against B. and began to advance him money, and in February, 1897, B. executed to them a mortgage to secure certain notes and other advances to be made, the mortgage

46 Fla.—10

covering substantially all his property, and containing an obligation to ship them as fast as manufactured the products of his turpentine farm. About the time W., W. & Co. began business with B. one C., a member of the firm, called to see B. at his turpentine farm and told him that W., W. & Co. had purchased the notes and mortgage held by McC., and discussed business matters with him. B. told C. he had G. employed and stated the amount he then owed him. During this visit C. verbally stated to G. that he must continue in the employment of B. and that W., W. & Co. would see that he was paid. It does not appear that G. was dissatisfied at that time, nor that he proposed to quit the service of B., nor does it appear that the promise was regarded as an absolute one either by W., W. & Co. or G. There was no new hiring, nor was G.'s account which before that time ran against B. alone changed from B. to W., W. & Co., nor to both jointly. No demand was ever made upon W., W. & Co. as principals to pay the account, and all payments made upon it were made by B. In a suit by the administrator of G. against B. and W., W. & Co. jointly to recover the amount due, *Held*, that W., W. & Co. were not liable as principals; that their engagement was collateral merely, and that the promise made on their behalf by C. was a promise to answer for the debt or default of B. and required by the statute of frauds to be in writing.

4. The decision in *Craft v. Kendrick,* 39 Fla. 90, 21 South. Rep. 803, must be confined to the facts of that case in so far as it construes the statute of frauds. The mere fact that a verbal agreement to answer for the debt, default or miscarriage of another is an absolute promise to pay the debt, and that it is supported by a new consideration does not necessarily take it out of the statute of frauds.

5. It is necessary to declare specially on a guaranty or promise to pay or answer for the debt or default of a third person. The common counts will not suffice to recover upon such cause of action.

HOCKER, J., being disqualified, took no part in the decision of this case.

This case was decided by the court *En Banc.*

Writ of error to the Circuit Court for Putnam county.

The facts in the case are stated in the opinion of the court.

*Cooper & Cooper* for plaintiffs in error.

*Davis & Hilburn* for defendant in error.

CARTER, J.—This cause was duly considered by Division B of the court, who referred it to the court *in banc* for decision.

On August 7, 1899, defendant in error began his action against plaintiffs in error and one Hazard Bardin, in the Circuit Court of Putnam county to recover the sum of $1,287.79 for work and labor alleged to have been performed by plaintiff's intestate for the defendants at their request, and to enforce an alleged mechanic's lien therefor upon certain property. The original declaration, filed September 2, 1899, was held bad on demurrer and leave given to amend. On January 1, 1900, plaintiff filed his amended declaration purporting to contain three counts. The first count alleged that on August 9, 1898, the defendants were justly indebted to the plaintiff's intestate in the sum of $1,287.79 for work and labor done and performed for defendants at their request. It set forth particularly the nature of such work and labor and alleged that it was performed for defendants in and about their business as turpentine and rosin manufacturers, and that a notice of the alleged lien for such services had been filed as required by statute.

The second count alleged that the defendants, during the lifetime of the said John F. Grainger, deceased, on the ninth day of August, A. D. 1898, were justly indebted to the said John F. Grainger, deceased, in the further sum of $1,287.79 for work done and materials furnished by the said decedent John F. Grainger during his life for the use and benefit of the defendants at their request.

The third count alleged that defendants were indebted to the plaintiff in the further sum of $1,287.79 for money

found to be due from the defendants to the plaintiff as administrator on accounts stated between them.

The remaining allegations of the declaration follow the socalled third count, and, so far as they are material to be considered, relate to the notice of lien alleged to have been filed by the plaintiff and to his right to a lien upon certain products of the turpentine farm, with a prayer that said property be sold to satisfy the sum due for services rendered, together with attorneys' fees, interest and costs, concluding with a clause "and the plaintiff as administrator as aforseaid claims $1,500 damages."

The bill of particulars attached to the declaration is as follows:

"West, Wiggs & Co., and Hazard Bardin,

to

John M. Grainger, as Administrator of the estate of John F: Grainger, deceased, Dr.

Aug. 30th, 1898.   Balance due for work as rendered by defendants to plaintiff, $1,287.79.

The defendants demurred to the whole declaration, and also to the first count, and all that portion following the third count down to the *ad damnum* clause, upon various grounds set forth in the demurrers. The court overruled the demurrer to the whole declaration, but sustained the demurrer to portions thereof, *to-wit*: the first count and all following the third count down to the *ad damnum* clause, on the ground that the facts stated therein do not entitle plaintiff to claim a lien under the laws of Florida. The order upon the demurrer also specifically holds the second count for work done and material furnished, and the third count for money due upon account stated, to be good, and required defendants to plead to those two common counts within a time named.

On May 28, 1900, West, Wiggs & Co. filed their plea to the second and third counts, that they "never were indebted as alleged," upon which issue was duly joined. In August

following a default was entered against Hazard Bardin for a failure to plead. In November, 1900, a trial was had, resulting in a verdict for plaintiff for the amount claimed in the common counts, *viz*: $1,287.79. A motion for a new trial questioning the propriety of the verdict upon various grounds, among others, that the verdict was contrary to the law and the evidence and not supported by the latter, and that the court erred in giving an instruction hereinafter more particularly noticed, was overruled and judgment was entered against West, Wiggs & Co. and Hazard Bardin for the amount of the verdict, from which this writ of error was taken.

Bardin, though named as a plaintiff in error in the suit, has refused to join in its prosecution and the cause is maintained in this court by West, Wiggs & Co. alone. •

The first four assignments of error question the propriety of the ruling on demurrer to the amended declaration. We will notice in detail the contentions made under these assignments. It is first insisted that the amended declaration properly construed contains but one count. that all the so-called counts are in substance and effect but paragraphs in one count, which count it is claimed constitutes the plaintiff's declaration in a special statutory action to enforce a lien, and that consequently when the court held that plaintiff under the allegations had no lien to enforce, the entire declaration was bad, and should have been so held on demurrer. The common counts to which we have referred do not claim a lien, nor do they undertake to set up facts from which the court may determine if a lien exists. They merely declare generally for work done and materials furnished, and upon an account stated. The matter immediately following the third count relating to a lien is expressly confined to the first count, and we think the Circuit Court was justified in construing the declaration as one claiming to recover and enforce a lien for the matters set up in the first

count, and as seeking to recover a simple personal judgment upon the two common counts.

It is further insisted that if the declaration be construed as we hold the Circuit Court was justified in construing it, that then the declaration was bad because of a misjoinder of actions. The argument is that one action can not be maintained to recover a personal judgment for work done and materials furnished and upon account stated, and at the same time to enforce a statutory lien for personal services rendered.

Section 1004, Revised Statutes, provides that causes of action of whatever kind, by and against the same parties in the same rights, may be joined in the same suit, except that replevin and ejectment shall not be joined together, nor with other causes of action. It also provides that the court shall have power to prevent the trial of different causes of action together if such trial would be inexpedient, and in such cases may order separate records to be made up and separate trials to be had. This statute is very broad, and we see no reason to doubt that it authorizes the joinder of causes of action such as were joined in this case. The objection urged, that a single judgment could not be made applicable to both causes of action if well founded, might furnish a reason for the court to order separate records to be made up and separate trials to be had, in order that separate judgments might be entered, but it would furnish no reason for holding that the causes of action were improperly joined. See *Jefferson County v. Hawkins,* 23 Fla. 223, 2 South. Rep. 362. We see nothing in section 1744, Revised Statutes, as amended by chapter 4582, approved June 2, 1897, which militates against this view. That section, in prescribing remedies for enforcing liens against property by persons in privity with the owner, provides that it may be done (1) by retention of possession; (2) by bill in equity; (3) by ordinary suit at law; (4) by suit at law in which the declaration is required to state the manner

in which the lien arose, etc., and in which the judgment
shall not only be a personal one, but declare a lien and
direct execution against the property. Such a joinder of
counts will not be precluded by the fact that it would re-
sult in a single judgment embracing both a personal recovery
against the defendant and the adjudication of a lien upon
specific property. The statute contemplates that this form of
judgment may be entered, and prescribes it under the
fourth remedy given the lienor. The section, in prescribing
these remedies, does not purport to regulate the matter of
joinder of actions at law, nor to declare that the common
law actions therein authorized shall not be joined with
other actions. We see no good reason why, as in this
case, counts may not be inserted in a declaration filed in
the suit at law authorized by that section which would
authorize the plaintiff to recover a personal judgment
against the defendant for the work done or materials fur-
nished if he is liable for same, even though from a defect of
proof or other cause the plaintiff should fail to establish his
right to a lien. In the present case the court held that
plaintiff was not entitled to a lien upon the facts specially
alleged, which ruling is not now before us for review, but
that the second and third counts, being common counts,
would enable plaintiff to recover a personal judgment for
the causes of action therein set up. We do not think there
was such a misjoinder of causes of action as to require the
court to sustain the demurrer upon that ground.

The fourth assignment of error complains that the
court below erred in requiring defendants to plead to those
portions of the declaration held good on demurrer without
requiring the plaintiff to first amend the declaration. The
portions of the declaration mentioned contained merely
the common counts, and it is not suggested that these counts
were deficient in allegations as such. It was, therefore, en-
tirely proper for the court to require defendants to plead
to them without any amendment of the declaration.

It appears from the testimony that John F. Grainger, plaintiff's intestate, was continuously in the employment of Hazard Bardin from January, 1893, until August, 1898: Bardin was engaged in the turpentine business, and Grainger was his general overseer and allowed the money due him for services to accumulate until he ceased to work for Bardin, when there was a balance due him of $1,337.79, which was afterwards reduced by a payment of $50, made by check of Bardin on West, Wiggs & Co. West, Wiggs & Co., who were factors in Savannah, Ga., had no business relations with Bardin until 1896, when they purchased of one McCall certain notes and a mortgage which he held against Bardin, and began to advance him money, and in February, 1897, they took from him certain notes aggregating $15,000 and a mortgage to secure these and other advances, covering substantially all his property, with an obligation to ship them as fast as manufactured the products of his turpentine farm.

Plaintiff introduced testimony tending to prove that in May or June, 1896, about the time West, Wiggs & Co. began business relations with Bardin, one Cassels, a member of the firm of West, Wiggs & Co., called to see Bardin at his turpentine farm; told him that West, Wiggs & Co. had purchased the McCall note and mortgage and talked over business matters with him. Bardin told Cassels that he had Grainger employed and stated the amount he then owed Grainger. Bardin on behalf of plaintiff testifies that in this conversation Cassels "instructed me to hire Grainger, that is after we talked the situation over he told me to keep along as I was." The plaintiff testified "at the time Cassels came to see Bardin about the business in May or June, 1896, I heard him tell my father, John F. Grainger, that he must continue in the employment of Bardin, and that West, Wiggs & Co. would see that he was paid." There is nothing in the evidence tending to show that at the time of this promise Grainger proposed to quit the service of Bardin, or that he was in any way dissatisfied, nor that the promise

was regarded as an absolute one either by West, Wiggs &
Co. or by Grainger.  There was no new hiring, nor was the
account changed from Bardin to West, Wiggs & Co., nor to
both jointly.  No demand was ever made upon West, Wiggs
& Co. as principals to pay the account, and all payments
thereafter made were made by Bardin.  The language used
by Cassels imports *prima facie* a collateral engagement, that
is that West, Wiggs & Co. would see that Bardin paid
his debt to Grainger for services rendered or to be ren-
dered or that they would pay it if Bardin did not.  It is true
that circumstances may exist which will show that an en-
gagement in the language used by Cassels was intended to
be original and not collateral (*Craft v. Kendricks,* 39
Fla. 90, 21 South. Rep. 803 ; *Davis v. Patrick,* 141 U. S.
479, 12 Sup. Ct. Rep. 58 ; *Grant v. Wolf,* 34 Minn. 32, 24
N. W. Rep. 289 ; *Amort v. Christofferson,* 57 Minn. 234,
59 N. W. Rep. 304), but the circumstances under which the
promise was made in this case do not, in the opinion of
the court, affect this result here.  *Wagner v. Hallack,* 3
Colo. 176 ; *Rose v. O'Linn,* 10 Neb. 364, 6 N. W. Rep. 430 ;
*Morrissey v. Kinsey,* 16 Neb. 17, 19 N. W. Rep. 454;
*Walker v. McDonald,* 5 Minn. 455 ; *Payne v. Baldwin,* 14
Barb. 570 ; *Walker v. Richards,* 41 N. H. 388 ; *Brown v.
Weber,* 38 N. Y. 187 ; *Robertson v. Hunter,* 29 S. C. 9, 6 S.
E. Rep. 850 ; *Pettit v. Braden,* 55 Ind. 201 ; *Haverly v.
Mercur,* 78 Pa. St. 257 ; *Lewis v. Lewis Lumber Mfg. Co.,*
156 Pa. St. 217, 27 Atl. Rep. 20 ; *Hall v. Woodin,* 35
Mich. 67.  The cases of *American Lead Pencil Co. v.
Wolfe,* 30 Fla. 360, 11 South. Rep. 488, and *Craft v. Kend-
rick, supra,* are relied upon by defendant in error as showing
that the promise in this case was not collateral.  In the first
of those cases the ruling was that a promise by the vendee
of cedar logs to be thereafter delivered to pay over the pur-
chase money therefor with the consent of the vendors to
third parties who were to furnish goods to such vendors,
is not a transaction within the statute of frauds and required
to be in writing.  The transaction there was merely a

promise by a debtor to pay his debt to a third person desig-
nated by the creditor, and was properly held not within the
statute.   1 Brandt on Sur. & Guar., sec. 66.

In the other case there was evidence tending to show
that plaintiff was employed by contractors to labor upon a
dwelling they were erecting for defendant; that there re-
mained due from the contractors $137.37; that before he had
completed his work he had a conversation with defendant
in which he told her the contractors had run away; that
he was a poor man and could not afford to lose his money,
and asked her how he was to get his money; that she told
him she had over $500 of money due the contractors in her
hands and that she would see him paid; that she would pay
him herself.   The defendant admitted, as a witness, that
she owed the contractors $500 at the time of this alleged
conversation.   It was held that this evidence tended to prove
an original and not a collateral promise.   There the plain-
tiff had refused to continue work upon defendant's house,
and the defendant being indebted to the contractors in a
sum greater than they owed plaintiff, and in order to com-
plete her house which was then in an unfinished state, made
the promise testified to by plaintiff.   This promise was not
merely an engagement to see plaintiff paid, but it was
coupled with the further statement that she would pay him
herself.   That case was rightly decided upon the facts, but
there are expressions in the opinion and the headnotes that
are too broad.   It can not be that every absolute verbal
promise to pay the debt of another upon some new consid-
eration moving to the promisor is without the statute of
frauds.   The statute will not admit of that interpretation.
*Martyn v. Amold,* 36 Fla. 446, 18 South. Rep. 791.   The
language of the opinion and headnotes in that case is, there-
fore, modified so as to confine the decision to the facts there
shown.

Holding as we do that the engagement claimed by plain-
tiff to have been entered into by Cassels on behalf of West,

Wiggs & Co. was a collateral promise to answer for the debt of Bardin, it follows that the court erred in giving the instruction, complained of in the fifth assignment of error, which is as follows: "If the jury believe from the evidence that after West, Wiggs & Co. acquired the mortgages given by Bardin and offered in evidence that any member of the firm of West, Wiggs & Co. told John F. Grainger, deceased, that he must continue in the employment of Bardin, and that West, Wiggs & Co. would see that he was paid, and that the account sued on is for the work and labor of John F. Grainger, deceased, of the kind contemplated by West, Wiggs & Co., and that it was done and performed by said Grainger after he was so told to continue with Bardin, then the said promise of West, Wiggs & Co. would not be embraced in the statute of frauds, and need not be in writing to bind West, Wiggs & Co."

It is also insisted under proper assignments of error that the court erred in refusing the motion for a new trial, inasmuch as no recovery could be had under the declaration in this case based upon proof of a collateral promise. In 2 Chitty's Pleadings, p. 137, it is said "it is necessary to declare specially on a guaranty or promise to pay or answer for the debt or default of a third person. The common count will not suffice." This proposition is abundantly sustained by the authorities, and as we hold that the alleged agreement of Cassels was a collateral undertaking to pay the debt of Bardin, no recovery thereon could be had under this declaration which contains only common counts. *Mason v. Munger,* 5 Hill (N. Y.), 613; *Mines v. Sculthorpoe,* 2 Camp. 215; 1 Saund. 211b; *Power v. Rankin,* 114 Ill. 52, 29 N. E. Rep. 185; *Smith v. McGehee,* 14 Ala. 404; *Winton v. Meeker,* 25 Conn. 456; *Adams & Westlake Co. v. Westlake,* 92 Ill. App. 616; *Johnson v. Clark,* 5 Blackf. (Ind.), 564; *Elder v. Warfield,* 7 H. & J. (Md.), 391; *Douglass v. Reynolds,* 7 Pet. 113; *Northrup v. Jackson,* 13 Wend. (N. Y.), 85.

The other questions presented by the assignment of errors need not be considered, as they are not likely to arise upon another trial.

The judgment is reversed and a new trial granted.

HOCKER, J., being disqualified, took no part in the decision of this case.