[No. 5706.]

## TUTTLE v. WELTY.

1. **Sale—Certainty of Terms**—The purchaser of goods will not be heard to deny liability, merely because the amount of the commodity purchased was not stipulated, at the time of the transaction, nor the price, or time of payment specified, where the quantity actually delivered is shown, and the market price was the price contemplated by the parties.—(26)

2. **Appeals—Harmless Error**—The admission of testimony which has no material bearing upon the issues is harmless. —(26)

3. **Where the Facts Will Be Examined**—Where the cause is tried without a jury, and the evidence is in conflict, the court of review cannot interfere.—(28)

4. **Statute of Frauds—Whether Promise Direct or Collateral** —Plaintiff refused credit to one "C," but stated that credit would be extended, if defendant would stand good for the bill. Later "C" reported that defendant had agreed to be responsible. Accordingly plaintiff delivered the goods. Defendant, upon being informed of what had occurred, said it was all right. Held that promise was direct, and defendant liable.—(27-28)

*Appeal from Saguache County Court* — Hon. JOHN H. WILLIAMS, Judge.

Mr. C. M. CORLETT, for appellant.

Mr. JAMES V. VEERKAMP, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

John Welty, plaintiff, brought this action against Watson P. Tuttle, defendant, in a justice's court, to

recover for a balance which he claimed to be due him from defendant on an account for grain sold and delivered. Plaintiff had judgment there, and also on appeal in the county court, and defendant is here with his appeal. There is no doubt that defendant promised to pay plaintiff for the grain in question, but defendant says his promise was collateral, not direct, a promise to pay not his own, but another's, debt, and as the promise was not in writing, as sec. 2025, Mills' Ann. Stats., requires, he is not bound by it. As preliminary to the main discussion, we note and dispose of several minor objections.

Defendant says that the transaction was not a sale at all, because the price of the commodity was not specified, the amount of sale uncertain, and the time of payment not fixed. There is evidence tending to show that the price was to be the market price. The quantity of grain was shown, hence the amount is a matter of mathematical calculation. This transaction was one of several similar ones between the parties, and the court was justified in inferring from facts in evidence that the time of payment was at the convenience of defendant. Were this not so, time not being fixed, the law presumes a reasonable time. There were objections by defendant to the evidence which the court overruled. The trial was to the court, without a jury, and we do not see how it is possible for the defendant to be prejudiced by the rulings complained of. The parties are in accord that the court made a mistake in admitting a letter written to plaintiff by one of defendant's witnesses. Without deciding that this letter was improperly introduced, we are entirely clear that it was not prejudicial to defendant, as it does not seem to have any material bearing upon the issues, and the other evidence in the record warrants the judgment.

To a proper understanding of the principal point raised by defendant, that he cannot be held to his promise because it was to answer for the debt of another, and was not in writing, a summary of the pertinent evidence follows: Thomas Chambers, who was working for defendant, and had in a growing crop on defendant's lands, came to plaintiff's home, the parties being farmers, for the purpose of buying grain. He did not have the money to pay for it, and plaintiff refused him credit. Upon an inquiry by Chambers if credit would be extended if defendant would stand good for the bill, plaintiff replied that it would. Soon after this conversation, Chambers again appeared at plaintiff's farm, and reported to plaintiff that defendant said he would stand good for the payment of the grain which was wanted; whereupon plaintiff delivered it to Chambers, and charged the amount of the sale to defendant. After this transaction between plaintiff and Chambers, plaintiff saw defendant and told him what had taken place, and asked him if it was all right, to which, in substance, defendant said that it was. Thereupon plaintiff told defendant that Chambers wanted more grain, and asked if he should let him have it in the same way, and with the same understanding, to which defendant replied to let Chambers have it, which plaintiff did. About the same time, defendant himself bought some grain of plaintiff for himself and for his brother, Ed Tuttle, and the amount of the purchase was charged to defendant's account. Defendant, at the time, took away part of the grain, and said that his brother Ed would call for the balance, which he did, and plaintiff delivered it to him. At one or more times, subsequent to these transactions, plaintiff requested payment of defendant, and, according to plaintiff's statement, no claim was made by defendant that he was not holden for the balance

due, but he requested plaintiff to extend for one year the time of payment, which he did; after the expiration of which time this action was brought, defendant refusing to pay, to recover the balance due on grain delivered to Chambers and Ed Tuttle.

There can be no doubt that the judgment is right as to the grain delivered to Ed Tuttle, and we decline even to discuss the point. There is a material conflict as to some of the foregoing facts concerning the Chambers grain, but the court heard the witnesses and gave credit to plaintiff's version, with which adjustment of the conflict we cannot interfere. Assuming, therefore, the truth of such facts, we are clearly of opinion that the promise of defendant, as to the Chambers branch of the case, was not collateral. Plaintiff refused to extend credit to Chambers, and did not deliver the grain until after it was reported to him that defendant would stand good for it; and at the subsequent interview between plaintiff and defendant, the latter did not deny that he had told Chambers that he would be bound. On another ground, defendant is liable. Had he wished to escape liability because his promise was collateral, and not direct, the time for him to do so was at this interview. Defendant's conduct at that time is in law a ratification, even if he did not, in the first instance, tell Chambers to buy the grain on his credit. Defendant had full knowledge of the transaction, and approved and ratified Chambers' act, and made it his own. On the strength of Chambers' statement to plaintiff that defendant would stand good for the grain, plaintiff delivered it to Chambers, and made a charge against defendant for it. Defendant knew that credit was extended to him, not to Chambers, and when the facts were brought to his attention, by his conduct and statements he acquiesced therein, and thereby ratified and made Cham-

bers' acts his own.—23 Am. & Eng. Enc. of Law (2d ed.), p. 889.

The judgment is clearly right, and it is affirmed.

*Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE WHITE concur.