## No. 14,808.

CLAYTON COAL COMPANY *v.* KING ET AL.

(113 P. [2d] 672)

Decided May 12, 1941.

Mr. Jacob V. Schaetzel, Mr. Merrill A. Knight, Mr. D. W. Strickland, Jr., Mr. E. J. Schaetzel, for plaintiff in error.

Mr. Frank L. Fetzer, Mr. J. H. Burkhardt, for defendants in error.

*En Banc.*

Mr. Justice Knous delivered the opinion of the court.

This action was instituted by plaintiff (plaintiff in error), as assignee of the Marlatt Coal Company, to recover from the defendants (defendants in error) upon an alleged oral promise to pay the reasonable value of coal which plaintiff claimed the Marlatt Company delivered to two third party greenhouse companies, in which it was asserted the defendants were financially interested. By separate answers defendants denied the making of the promise alleged; admitted they had a financial interest in the greenhouse companies to the extent that both were stockholders in the Silver State Building and Loan Association which held a mortgage

on the greenhouses for an amount in excess of their value; that, also, the defendant Silver State Company was a minority stockholder in one of the greenhouse companies and also its creditor, and by affirmatively pleading that the alleged agreement set forth in the complaint was a special promise to answer for the debt, default or miscarriage of another person and not in writing, invoked the aid of the statute of frauds. Section 12, subdivision 2, chapter 71, '35 C.S.A., declares that agreements so deficient, "shall be void." At the conclusion of plaintiff's case the court directed a verdict for defendants upon their several motions and to review the judgment following, plaintiff prosecutes this proceeding in error.

To warrant recovery under the pleadings the plaintiff had the burden of establishing that the oral promise asserted was original and unconditional and thus amounted to an assumption by defendants of the direct liability for coal thereafter furnished the greenhouse companies by plaintiff's assignor. However, if the proof adduced, considered in the light most favorable to the plaintiff, was insufficient to establish that such an original undertaking arose from the promise and the surrounding circumstances the promise must be considered as having been collateral and thus within the statute of frauds. The evidence shows that the Marlatt Company began furnishing coal to the greenhouse companies on open account in January, 1937. Until March of that year it appears the Silver State Building and Loan Association, the holder of the mortgage on the greenhouses, paid for a part or all of such coal but in April refused to make further payments on such accounts. Beginning in June the greenhouse companies themselves made substantial payments on the accounts. In September, the beginning of the season of heavier coal consumption, with balances still remaining due on the accounts, A. E. Marlatt, owner of the Marlatt Company, obviously torn between the anxiety of losing two

customers if he discontinued delivery of coal to them, or of losing the purchase price if he did, seems to have interviewed an indefinite number of officers, employees and stockholders of the building and loan association relative to the future delivery of coal to the greenhouse companies. In one of these conversations with defendant King, whom Marlatt testified, "is president of the Silver State Building and Loan Association [not a party here]. He owns stock in the Silver State Company [a defendant]; I don't know whether he is an officer" in the latter, it is said King stated, as the promise here relied upon: "Mr. Marlatt, I know you have to have your money and I am going to see you get it."

In *Wagner v. Hallack*, 3 Colo. 176, at page 183, we said: "Standing alone and uncontrolled by circumstances showing a contrary intent, the words 'we shall see the articles paid for,' or equivalent words, import a collateral undertaking, and are within the statute of frauds. Throop on Verbal Agreements, §197 et seq.; *Watkins v. Perkins*, 1 Lord Raymond, 224; *Skinner v. Conant*, 2 Vermont, 453; *Twarts v. Crul*, 6 B. Monroe, 472; *Cahill v. Bigelow*, 18 Pick. 369." See, also, *East Baltimore Lumber Co. v. K'Nessett, etc., Congregation*, 100 Md. 125, 59 Atl. 180, and *Grant v. Wolf*, 34 Minn. 32, 24 N.W. 289.

In many particulars plaintiff's own evidence bespeaks that the undertaking was as *collateral* as the words of the promise thus implied and the identity of the alleged promisors as uncertain as the nature of the promise. Typically, Mr. Marlatt, except for a book-keeper who identified the accounts, the only witness for plaintiff, testified as follows concerning his understanding of the arrangement:

"The Court: All right. Are you seeking to collect this from anybody else other than O. A. King and the Silver State Company?

The Witness: No. That group, the men—I don't know all of the company; I don't know all the people that be-

longs to either company, but I had dealings with Dunton, King and different ones, and they was the men I knew that was interested in the Colorado Floral, the Silver State Building and Loan and the Loan Companies, the Silver State Company.

Q. And it was as to that group you were looking for payment? A. Yes.

Q. And you were not looking to the Colorado Floral Company or Mile-Hi Hot House Company, is that right? A. I wasn't depending on the Hot Houses paying the bills.

The Court: What do you mean by that?

The Witness: That I would look to the men that was interested in that—if their crops didn't pay it, that they would, just as they told me.

Q. Then you really did look to the Hot House Companies, did you, and only looked to them as an alternative? A. Mr. King made a statement they figured they would have $50,000 in crops and I supposed they would take in those funds, and if — that we would get our money, because he assured me he would see that we got our money."

The crop assignment to the Marlatt Company, hereinafter to be mentioned, reflects compliance by King with this conditional plan of payment.

As further disclosing that the understanding was not unconditional, Marlatt testified: "Mr. King even told me they wouldn't take any money out of that crop or wouldn't ask for interest or anything until our bill was paid for the coal." And at another point the witness said Mr. King "guaranteed the bills." In view of these expressions by the representative of plaintiff's assignor it is logical to consider that the two payments of the Silver State Company credited on the greenhouse accounts were made and accepted under such collateral arrangement.

An examination of the other facts, in our view, not only fails to disclose circumstances which would war-

rant a construction different from that which the law primarily imports to the words of the promise (*Wagner v. Hallack, supra*), but, on the contrary, further reveals a continued course of conduct on the part of the Marlatt Company inconsistent with the existence of any original promise on the part of the defendants to pay for such coal. These antagonisms arise from the facts: (1) That the coal furnished to the greenhouse companies was charged to them on the books of the Marlatt Company and not to defendants or either of them; (2) that the assignor of plaintiff, after the indebtedness sued upon had been incurred, filed a claim as an original indebtedness in the insolvency proceedings involving one of the two greenhouse companies and accepted the dividend paid thereon; (3) that subsequent to the passing of the alleged promise, following a conference in which a representative of plaintiff's assignor participated, the two greenhouse companies addressed a letter to the Marlatt Company assigning to it the net proceeds, to the extent thereby fixed, to be derived from the sale of the crops then growing in said greenhouses, with directions to the marketing agency handling the same to pay the receipts therefrom to the Marlatt Company. Thereafter the Marlatt Company assigned the benefits to accrue from the arrangement fixed by this letter to a Denver Bank and such crop proceeds were paid to the Marlatt Company or to said bank. The Marlatt Company's attorney took part in the drafting of such letter, which, inter alia, reserved to it the right to sue either of the greenhouse companies for any balance due on the coal account. (4) Plaintiff claimed as the amount recoverable, the balance due, after the application of credits from all sources, on the open accounts of the greenhouse companies from *January 1, 1937,* notwithstanding that its complaint alleged, as was its proof, that the promise made in *September, 1937* was limited to "coal thereafter delivered."

■■ Plaintiff concedes that the entries in the books of its assignor were of strong probative value as proof that the coal was furnished on the credit of the greenhouse companies and not that of defendants (See, *Wagner v. Hallack, supra,* wherein it was said that entries in the books of the person furnishing goods, prima facie, are admissions that the goods were furnished on the credit of the person to whom the charge was made), and that the evidence of the other circumstances detailed was proof that the Marlatt Company intended to hold the greenhouse companies as the principal debtors but, notwithstanding, it argues that such evidence was not conclusive of the question, and that for this reason the issue should have been submitted to the jury. While it is quite true that where the language used, together with the surrounding facts and circumstances, make it doubtful whether the parties intended by the promise to create an original or a collateral obligation, the intention should be determined by a jury, it nevertheless is equally well recognized that, as the construction of an agreement is a question of law, where the court can ascertain the terms of the alleged promise from the evidence, especially if, as here, there is no conflict therein, it is proper for it to decide as a matter of law whether the alleged promise is original or collateral. 25 R.C.L., p. 490, §73. We think the court was justified in taking the latter course here. Notwithstanding that no one of the above detailed circumstances standing alone might justify the direction of a verdict for the defendant (See note 99 A.L.R., pp. 83, 84, subdiv. II), their cumulative effect, together with the equivocal and insufficient character of the other evidence of plaintiff, would not have warranted the court in permitting a jury to find that the defendants were liable on a new and original undertaking to pay for the coal in question.

■ Since, in our view, the evidence failed to show that defendants gained any immediate pecuniary benefit or advantage from this transaction, the cases of *Tuttle*

*v. Welty,* 46 Colo. 25, 102 Pac. 1069; *Spelts v. Anderson,* 67 Colo. 63, 185 Pac. 468; *Moon v. Greenlee,* 69 Colo. 482, 195 Pac. 1100, and *Mayer Oil Co. v. Schnepf,* 100 Colo. 579, 69 P. (2d) 775, wherein consideration for an unequivocal promise was imported because of the direct personal benefit and business advantage accruing to the promisor from its performance, are not helpful to plaintiff. The mere fact that one of the defendants was a stockholder in one of the greenhouse companies does not, in itself, supply a sufficient personal interest to take out of the statute an oral promise to pay for goods furnished the corporation. See 25 R.C.L., p. 490, §74.

■ Feeling that the abstract of the record prepared by plaintiff in error was deficient in that it did not contain some matters necessary to a determination of the litigation, defendants in error filed a supplemental abstract, which we deem was essential for a proper understanding of the case, and, accordingly, it is ordered that the cost of such supplemental abstract be taxed to the plaintiff in error. See, Rule 115 (a) R.C.P. Colo.

The judgment is affirmed.

Mr. Chief Justice Bouck, Mr. Justice Young and Mr. Justice Hilliard not participating.