MARTHA J. KING v. FRANKLIN LUMBER COMPANY.[1]

June 22, 1900.

Nos. 12,014—(177).

**Verdict Sustained by Evidence.**
Evidence in this case considered, and found to be sufficient to support
the verdict of the jury.

**Contract—Payment of Board—Statute of Frauds.**
The agreement of the defendant to pay plaintiff for the board of cer-
tain lumbermen engaged for third parties on their contract with defend-
ant *held* not to be within the statute of frauds.

Appeal by defendant from an order of the municipal court of
Duluth, Edson, J., denying a motion for judgment notwithstanding
the verdict or for a new trial. Affirmed.

*Jaques & Hudson,* for appellant.

*Fryberger & Johanson,* for respondent.

LOVELY, J.

Action to recover for board furnished a number of lumbermen at
the boarding house of plaintiff, which it is claimed defendant agreed
to pay, and to whom credit was extended, although the men were
employed on a contract with third parties. Plaintiff had a verdict.
Defendant, after motion for a new trial, which was overruled, ap-
peals to this court.

The facts essential to the issue are as follows: One King (who is
the husband of plaintiff) and McKiver entered into a written con-

1 Reported in 83 N. W. 170.

tract with defendant to cut, haul, bank, and deliver at a certain pond and mill a large quantity of logs within a specified time. King & McKiver employed a number of men, established a camp, and entered upon the performance of their duties under the written agreement referred to. At a time when the contract was only partly completed McKiver became dissatisfied, and left the country. King also came to the conclusion that he could not, without help, secure the necessary supplies to take care of the men and teams at the camp to conclude the contract with the defendant according to its terms. Upon this view of the situation, King called upon the president of the defendant company (Webber), and represented to him that he could not get supplies to carry out his part of the contract, for the reason that he had no credit.

The evidence of what took place afterwards was conflicting, but there was testimony reasonably tending to show that Webber, as president of defendant company, on its behalf authorized King to get whatever he wanted for the purpose of carrying out his part of the contract, and that he told King that, if he would do so, there would be no trouble; also that he would pay the bills incurred for that purpose monthly, if they were approved by him. Afterwards, in a conversation with Webber, without any change in the arrangements for paying for supplies, King suggested that it would be a good plan to break up the camp, and bring the men to the mill, where they were required to work, and where plaintiff was keeping her boarding house, and have them board there, to which Webber assented. King then had a conversation with plaintiff to see if she would board the men if they were brought down to the mill while doing the work to close up the contract, and she declined to board them unless the defendant would become responsible for their board, to which King told her Webber had agreed; and she, relying upon the responsibility of the defendant, through Webber, and the assurance given by him through her husband, furnished board for a number of men during the period in which they were engaged at work in getting the logs into the pond and closing up the work upon the logging contract. A part of the board was paid by the defendant company upon an order given by King to his wife, but defendant declined to pay the balance, claiming that he made no contract what-

ever with Mrs. King, and that she must look entirely to her husband for her compensation.

There is no doubt but that it was of interest to the defendant company that this contract should be carried out, and it is highly probable that, unless the verbal agreement referred to above had been made between the defendant and King to help the credit of the latter, he would have been required to give it up as his partner, McKiver, had done. The trial court submitted the cause to the jury in a very fair and impartial manner upon the issue whether King had authority from the defendant, through Webber, to incur obligations for supplies to carry out the contract, and whether King was authorized to agree to have the men boarded by plaintiff at the mill, and did make such agreement in consequence thereof. Upon the submission of the case the jury returned a verdict in favor of the plaintiff for $121.99, the undisputed amount of the balance of the bill remaining due.

While the testimony was quite conflicting, from a careful review of the whole evidence we think there was sufficient to sustain the verdict which the jury has rendered, and as a matter of law they were authorized to determine whether there was any agreement between the plaintiff and defendant wherein the latter became obligated to pay for boarding the men. Under such aspect of the case so presented to the jury upon the evidence, the liability of the defendant cannot, after the verdict, be doubted. The promise of defendant was an original one, and not open to the objection that it was an agreement to pay the debt of another, and void under the statute of frauds. It was a valid promise that could be enforced. Grant v. Wolf, 34 Minn. 32, 24 N. W. 289; Maurin v. Fogelberg, 37 Minn. 23, 32 N. W. 858.

Order affirmed.