CHARLES BENNETT and Others v. WILL THUET and Another.[1]

July 13, 1906.

Nos. 14,811—(67).

**Sale—Statute of Frauds—Pleading.**

Action to recover the purchase price of cattle. The complaint alleged that they were sold and delivered by the plaintiffs to a third party at his request in consideration of a promise of the defendants to pay for them. The answer pleaded the statute of frauds and, further, that the alleged sale of the cattle was made subject to United States inspection, and that they failed to pass such inspection, and thereupon the purchaser refused to accept them. *Held,*

1. That the complaint alleged an original promise by the defendants to pay for the cattle and not a collateral one, and that the evidence is sufficient to sustain a finding that there was such a delivery and acceptance of the cattle as to take the sale out of the statute of frauds.

2. The evidence was sufficient to sustain the finding of the jury by their verdict to the effect that the defendants by their agent promised to pay for the cattle and that they were not sold subject to inspection.

3. There were no reversible errors in the rulings of the trial court as to the admission of evidence, nor in its instructions to the jury.

Appeal by defendants from an order of the district court for Ramsey county, Hallam, J., denying a motion for judgment notwithstanding the verdict or for a new trial, after a trial and verdict in favor of plaintiffs for $6,575.67.   Affirmed.

*J. P. Kyle,* for appellants.

*How, Butler & Mitchell* and *Pfau & Pfau,* for respondents.

START, C. J.

Action in the district court of the county of Ramsey to recover the purchase price of certain cattle alleged to have been sold by the plaintiffs to a third party upon defendants' promise to pay for them. The here material allegations of the complaint are to the effect that on October 31, 1903, at the village of Ree Heights, in the state of South

[1]Reported in 108 N. W. 1.

98 M.—32

Dakota, the plaintiffs sold and delivered to T. J. Mitchell at his request one hundred seventy five head of cattle in consideration of which the defendants then agreed to pay to the plaintiffs the sum of $6,104.60, and that no part thereof has been paid. The answer put in issue the alleged promise of the defendants to pay for the cattle, alleged the statute of frauds of South Dakota, which is similar to our own, and noncompliance therewith in making the alleged sale, and, further, that the cattle were sold by the defendants as commission men as plaintiffs' agents subject to inspection by the United States inspector at Sioux City, Iowa, the destination of the cattle; that they were condemned by the inspector for the reason that they were affected with a disease called scab; that for this reason Mitchell refused to receive them and thereupon the defendants sold them by direction of the plaintiffs and remitted to them the net proceeds of the sale which they retained. The reply put in issue the new matter alleged in the answer. The plaintiffs had a verdict for the amount claimed, and the defendants appealed from an order denying their alternative motion for judgment or a new trial.

It is practically conceded that at the time and place stated in the complaint the plaintiffs were the owners of one hundred seventy five head of cattle then in charge of the plaintiff Bennett. The defendants then were engaged in the business of selling live stock on commission, having their general office at St. Paul and a branch office at Sioux City in charge of L. C. Melady. There was also in the employ of the defendants at this place a cattle salesman named Horace Baldwin with whom Bennett had been acquainted for many years. Bennett requested him to find him a buyer for the cattle at Ree Heights and agreed that if he would do so to pay a commission on the sale just the same as if the cattle were in defendants' yards at Sioux City. Thereupon Baldwin with a prospective purchaser, T. J. Mitchell, went to Ree Heights, there met Bennett, and found the cattle in the shipping yards. As to what followed the evidence, in material respects, is conflicting. The defendants assigned sixty one alleged errors. We cannot consider them in detail, but they raise two general questions; whether the verdict is justified by the evidence; and further whether the trial court erred in its rulings as to the admission of evidence and in its instructions to the jury.

1. The first contention of the defendants to be considered is that their alleged promise to pay for the cattle was collateral to Mitchell's promise and further that there was no delivery or acceptance of the cattle, therefore the alleged sale and promise which were not evidenced by any writing were void under the statute of frauds.

It is reasonably clear that the complaint does not allege, as defendants claim, a collateral promise by them to pay for the cattle. It is true that where it is alleged that goods were sold and delivered to a party at his request an implied promise arises on his part to pay for them if there be no further allegations negativing such implication. The complaint alleges that in consideration of the defendants' promise to pay for the cattle the plaintiff sold and delivered them to Mitchell at his request. This may be, and is, construed as negativing any implied promise on the part of Mitchell to pay the plaintiffs for the cattle. If there was any implied promise on the part of Mitchell it was one to repay the defendants. The complaint upon its face does not allege a collateral promise on the part of the defendants but an absolute promise in consideration of which the cattle were sold and delivered to Mitchell. In the case of Maurin v. Fogelberg, 37 Minn. 23, 32 N. W. 858, 5 Am. St. 814, the promise was: "You give all the goods to H. & R. that they want and charge directly to them and every first of the month you bring in the bill and I will pay it." This promise necessarily implied that the goods were to be selected by H. & R. and delivered to them as they requested, but this court held that the promise was an original one. The facts and the reasoning of the case cited support our conclusion in this case. See also Cole v. Hutchinson, 34 Minn. 410, 26 N. W. 319.

There was evidence to sustain the finding that the alleged promise on the part of the defendants was made by their salesman, Baldwin. There was evidence tending to show that, after the terms of the sale of the cattle to Mitchell had been agreed upon, Baldwin, the defendants' salesman, acting as broker, they were weighed, and turned out on the prairie in charge of Bennett's herder for Mitchell by Bennett's direction; that then Bennett, Baldwin and Mitchell went to the hotel, and there the aggregate amount of the purchase price was ascertained by computation; that it was then learned that Mitchell did not have either money or drafts with which to pay for the cattle; that he was a

stranger to Bennett, who gave him no credit, but he was known to Baldwin; that Baldwin thereupon said, "Thuet Bros. will give you a check for the cattle," and Bennett gave no further order as to the cattle, or as to their shipment, but that Mitchell and Baldwin did, and took charge of them, giving orders with reference to their care, arranged for their shipment, and superintended the loading of them into cars all with the assent of Bennett; and that they caused the cattle to be shipped in the name of the plaintiffs as owners, but consigned to the defendants at Onawa, Iowa, to be unloaded at Sioux City.

We are of the opinion that the evidence, although conflicting, was sufficient to justify the finding that, whatever was done by the parties as to the sale and delivery of the cattle prior to the time the purchase price was computed, the cattle were sold and delivered in consideration of and in reliance upon the defendants' promise to pay for them. The sale was to be consummated at Ree Heights, not elsewhere, and for cash. It is clear that no credit was, or was intended to be, given Mitchell. It follows that the evidence was sufficient to sustain a finding that the defendants' promise was an original one, and not collateral, and that there was a delivery and acceptance of the cattle sufficient to satisfy the statute of frauds. There was evidence from which the jury might well have inferred that the cattle were consigned to the defendants for the purpose of enabling them to indemnify themselves on account of their promise for Mitchell's benefit.

2. The defendants, however, claim that Baldwin had no authority to promise for them to pay for the cattle and that the finding of the jury to the contrary is not sustained by the evidence. The evidence does not show that Baldwin was directly authorized to make the promise in question; the testimony of the defendants was to the contrary. We are, however, of the opinion that the evidence, which tended to show the scope of his instructions, the character and necessity of the business he was empowered to do, the conduct of the parties, and other circumstances, was sufficient to support the finding of the jury that he was authorized to make the promise.

3. The defendants further urge that the evidence in support of their affirmative defense that the cattle were sold subject to inspection, that on inspection they were found to have the scab, that they were then sold at plaintiffs' direction and proceeds of the sale were re-

mitted to and accepted by the plaintiffs, was so conclusive that the defendants were entitled to a directed verdict in their favor or at least to a new trial.

There is but little, if any, controversy in the evidence that on inspection the cattle were found to have the scab which necessitated their sale for some $1,500 less than the purchase price which resulted in a loss in that amount to some one. It may fairly be inferred that the real controversy in this case grows out of such loss. There is no claim of fraud or misrepresentation on the part of the plaintiffs. The testimony of both Baldwin and Mitchell was to the effect that the sale was subject to an inspection of the cattle at Sioux City and their testimony was corroborated by a number of cogent circumstances. The testimony of Bennett was to the contrary. He denied that the sale of the cattle was subject to their inspection at Sioux City or elsewhere. If it were simply a question of the weight or preponderance of the evidence we would be justified in holding that the defendants should have had a verdict in their favor on this issue. However, the credibility of the witnesses was a question for the jury, the evidence was conflicting and it cannot be said that there was no evidence to support the finding of the jury. We accordingly hold that the verdict is sustained by the evidence within the rule governing this court in such cases.

4. We find no reversible errors in the rulings of the trial court as to the admission of evidence nor in its instructions to the jury and refusal to give requested instructions. The charge of the court taken as a whole was neither erroneous nor misleading.

Order affirmed.

JAGGARD, J., dissents.