# CRYSTAL G. NOYES and Another .v. JOHN E. OSTROM and Another.[1]

December 23, 1910.

Nos. 16,902—(109).

**Promissory note — consideration.**

Upon default of a contractor, the sureties upon his bond undertook the completion of his contract, and to borrow money from a copartnership executed their joint note. Even though one of the sureties, a member of the firm to which the note was given, had agreed to indemnify the other sureties against loss, a consideration for the note passed to each signer. Nor is any such surety signing the note entitled to be considered merely an accommodation maker.

**Partnerships — common member of two — action between them.**

When two copartnerships have a common member, neither firm may sue the other in an action at law, but may maintain an equitable action, in which the individual rights of all the members of both firms may be adjusted.

**Counterclaim — answer states equitable defense.**

A claim against an individual member of a firm cannot be offset against a debt due such firm. But an answer alleging that defendants became sureties upon a bond upon the representation of a member of the firm, now bringing suit, that he held as security sufficient property to meet any liability upon the bond, and that he would save defendants harmless from any liability thereunder, states an equitable defense, which, under the circumstances of this action, may be pleaded and shown.

**Charge to jury — equitable relief.**

It was error to instruct the jury that defendants were entitled to a verdict, if their contention was true that a member of the plaintiff firm had undertaken to protect them from loss under the bond. But under all the circumstances disclosed this is *held* to be an action in which either plaintiffs or defendants may be entitled to equitable relief; and, all persons interested being parties to the action, such relief may be granted to each as he may show himself entitled to.

**Promise not within statute of frauds.**

When one requests another to join him as surety upon a bond, and promis-

[1] Reported in 129 N. W. 142.

es such other to save him harmless from loss upon the bond, the promise is an original agreement, and not within the statute of frauds.

Action in the district court for Marshall county by the executors of the last will and testament of Bolivar C. Gill and L. Lamberson against John E. Ostrom and August Lundgren to recover $1,166.53, balance claimed to be due upon a certain promissory note. The substance of the separate answers is stated in the opinion. The replies were general denials. The case was tried before Grindeland, J., and a jury which returned a verdict in favor of defendants. From an order denying plaintiffs' motion for judgment notwithstanding the verdict or for a new trial, they appealed. Reversed, and new trial ordered, without prejudice to the right of either party to apply for leave to amend their respective pleadings, with a view to a trial and submission of the action in accordance with the views expressed in the opinion.

*Brown & Eckstrom* and *Charles Loring,* for appellants.
*Martin O'Brien* and *Julius J. Olson,* for respondents.

O'BRIEN, J.

At the time of the execution of the promissory note hereafter referred to, one Gill and plaintiff Lamberson were copartners under the firm name of Bank of Warren; Lamberson being the active manager in charge, and Gill residing in Illinois. Mr. Gill died prior to the commencement of this action. The executors of his will, who were authorized to continue to operate the bank with Lamberson, brought this action jointly with Lamberson as partners under the firm name.

One Rhinehart had a contract with the county of Marshall for the digging and construction of a ditch. The plaintiff Lamberson and the defendants became sureties upon a bond given by him to the county under the terms of the contract. Rhinehart defaulted in the performance of and abandoned his contract, and the sureties upon the bond undertook its completion. For this purpose the sureties borrowed money from the Bank of Warren, executing their promissory notes therefor. When the contract was closed, and the money

received from the county applied to the notes, a balance remained due upon the note in suit, one-third of which balance was thereupon paid by Lamberson, and this action was brought to recover the remainder from the defendants.

The note in suit was signed upon its face by the defendants, and before delivery indorsed by Lamberson. Defendants answered separately, each setting up substantially the same defense, which was this: That, when it became necessary for Rhinehart to procure sureties upon his bond to the county, plaintiff Lamberson approached defendant Ostrom, and requested him as a favor and accommodation to him (Lamberson) to sign said bond as a surety; that he (Lamberson) had obtained from Rhinehart sufficient property to protect himself, and that he would at all times protect and save the defendant harmless from any and all liability as a surety upon the bond; that each of the defendants became a surety upon this promise and understanding; that upon Rhinehart's default the sureties became liable upon his bond, whereupon Lamberson requested and procured defendant Ostrom to take personal and active charge of the completion of the contract; that the note was executed solely for the purpose of obtaining money to complete the contract, and at the request of plaintiff Lamberson, for his accommodation, without any consideration whatever to either of the defendants, of all of which the Bank of Warren had knowledge and notice; further, that plaintiff Lamberson had received ample property from Rhinehart to meet the balance remaining due upon the note.

Upon the trial there was evidence as to the agreement claimed to have been made by Lamberson when the bond was signed. With reference to the giving of the note defendant Ostrom said: "A. After the ditch was abandoned by Rhinehart, we had talks in regard to it off and on at different times, as I remember it, but just exactly what the conversation was at that time I don't remember; but the gist of it was that we had to take hold of that work and complete it, because the captain had abandoned it." And again: "A. At the time the work was taken over, I went to Lamberson, and told him I would have to get money to carry on the work with, and pay for the men, and he suggested that we make out the notes for it, and we made out

113 M.—8.

the note, and he asked me if I would sign it with him, and I told him 'Yes,' and after I signed it he requested me to go to Lundgren and ask him to sign, and I went to Lundgren and asked him to sign it. I believe Lundgren was on all the notes that I signed. Q. In response to his request that you go and ask Lundgren to sign it, you went and asked Lundgren? A. Yes, sir. Q. And Lundgren did sign the note after you requested him to do so? A. I believe so. I believe he was on all the notes. Q. Including this note sued on? A. Yes, sir. Q. Who asked you to sign this note? A. Lamberson. Q. Did you ever have any personal interest in this note? * * * A. Not any."

Lamberson denied making any agreement to hold the defendants harmless from any liability upon the bond. He admitted receiving from Rhinehart, about the date of the execution of the bond, some property, but claimed it was given to secure an entirely different debt, and had no connection with the ditch contract, and that he received from it no more than the amount of the obligation it was given to secure.

In submitting the case to the jury, the trial court gave the following instruction: "In order for the defendants to prevail in this action, they must establish the defense set up by a preponderance of the evidence. If you find that the defendants have [by] a preponderance of the evidence established that the agreement as claimed by them was made at the time the bond was signed, and that it was pursuant to that agreement and without any other consideration and simply to accommodate Mr. Lamberson that they signed the note in question, then your verdict must be for the defendants. On the other hand, if defendants have failed to so establish this, your verdict must be for the plaintiffs for the full amount claimed."

1. Defendants contend that the note was executed purely as an accommodation to Lamberson, who, they claim, was the only person ultimately liable upon the bond. Hence, it is said, they were merely accommodation makers of the note, against which, it having been given to the firm of which Lamberson was a member, they were entitled to interpose the defense of want of consideration. We have no doubt that counsel's position is correct, if it is true that there was

no consideration for the execution of the note. It is also true, as claimed by defendants, that a copartnership does not occupy the same position with reference to a transaction of this sort as would a corporation, a legal entity entirely separate and distinct from the members who compose it.

But we think it is apparent that the copartnership did give a good consideration, inasmuch as it parted with the full amount of the note, and were the situation not complicated by the fact that Lamberson was a member of the firm, the question of how much of the amount so advanced went to benefit any one of the defendants would be entirely immaterial. In such case there would be no doubt that defendants would be liable, even though merely accommodation makers. Rea v. McDonald, 68 Minn. 187, 71 N. W. 11. But the defendants received consideration for the note. Eliminating for the present defendants' rights as between them and Lamberson, it must be remembered that they were primarily liable to the county of Marshall as sureties upon the bond which they executed. Upon the default of the contractor, they undertook the completion of his contract. It cannot be seriously questioned that it would be to their advantage to avoid this primary liability. The money advanced was to a greater or less extent for their benefit, to enable them to complete the contract. They were something more than accommodation makers.

2. When Rhinehart defaulted upon his contract, and the sureties undertook the completion of the contract, they (the sureties), if not copartners for this purpose, were at least engaged in a joint enterprise. Thereupon they executed the note to the firm of which Lamberson was a member. The situation, therefore, was analogous to that in which one of two copartnerships having a common member has a claim against the other.

In such case an action at law will not lie by one copartnership against the other, as no man may sue himself; but a suit in equity may be maintained, in which the rights and liabilities of all the parties to the transaction can be determined. Crosby v. Timolat, 50 Minn. 171, 52 N. W. 526. If the sureties should not be considered copartners, we still have a case in which, if the allegations of the

answer are true, the defendants have a complete defense against the action as to one of the members of the plaintiff firm, but not as to all; for, a good consideration having been given, the Gill estate is entitled to recover as its interest may appear. It seems hardly possible that under such conditions plaintiffs, including Lamberson, could maintain an action at law. 30 Cyc. p. 556, subd. c. But under our procedure this does not necessarily entitle defendants to judgment, as, if the allegations of the complaint or the pleadings as a whole show plaintiffs may be entitled to equitable relief, it should be granted. Crosby v. Timolat, supra.

It is not necessary at this time to consider the effect of section 4283, R. L. 1905, permitting the discharge of a joint debtor. This is also complicated by Lamberson's position as both debtor and creditor, and we think it better not to rule directly upon the question without fuller argument upon it.

In addition to alleging the agreement upon the part of Lamberson to hold defendants harmless, the answer alleged the possession by him of sufficient property to pay the balance of the note in full. If the allegations of the answer are true, defendants could have brought an action against Lamberson individually and made the firm a party, in which an accounting might be demanded from Lamberson, and the application of any funds found in his hands to the payment of the note in suit; for all of the partners are deemed to have possessed all the knowledge which Lamberson had. Hubbard v. Galusha, 23 Wis. 398. We have, therefore, a case in which all of the parties are before the court, in which adequate relief cannot be had at law, and one which is peculiarly the subject of equitable jurisdiction. Crosby v. Scott-Graff Lumber Co., 93 Minn. 475, 101 N. W. 610; Thorpe v. Pennock Mercantile Co., 99 Minn. 22, 108 N. W. 940. The instruction given to the jury was erroneous, because it was impossible to adjust the rights of the parties in an ordinary action at law. By doing so the rights of the plaintiffs other than Lamberson were ignored, and the instruction was erroneous as to them.

3. It is argued that a counterclaim or set-off against one member of a firm cannot be interposed in an action by the firm for debt due to it. We think this is true. Peck v. Snow, Church & Co., 47 Minn.

398, 50 N. W. 470; 30 Cyc. p. 502, subd. b.  This, however, only further emphasizes the fact that the respective rights of the parties to this action can only be fully protected in an equitable action.  The answer does more than plead a set-off.  As to Lamberson it sets up an affirmative defense.  It may be argued that, even conceding the truth of defendants' claims, they did not show grounds for equitable relief, as there was no claim that Lamberson was insolvent.  Barker v. Walbridge, 14 Minn. 351 (469); Birdsall v. Fischer, 17 Minn. 76 (100).  The rule stated in those cases does not seem applicable, when all the parties are before the court, certainly not when plaintiff's remedy is in equity.  Knoblauch v. Foglesong, 37 Minn. 320, 33 N. W. 865; Becker v. Northway, 44 Minn. 61, 46 N. W. 210, 20 Am. St. 543.

4. In view of another trial of the action, it is also proper that we should consider plaintiff's contention that the agreement claimed to have been made between Lamberson and the defendants was void under the statute of frauds.  We cannot so hold.  If made, it was an original promise upon the part of Lamberson for a sufficient consideration to save the defendants harmless, and while, in an action upon the bond, the defendants could not have varied their liability by parol testimony, their agreement with Lamberson, if made, may be enforced against him.  Yale v. Edgerton, 14 Minn. 144 (194); Maurin v. Fogelberg, 37 Minn. 23, 32 N. W. 858, 5 Am. St. 814; King v. Franklin Lumber Co., 80 Minn. 274, 83 N. W. 170; Bennett v. Thuet, 98 Minn. 497, 108 N. W. 1; Conrad v. Clarke, 106 Minn. 430, 119 N. W. 214, 482.

The order is reversed, and a new trial ordered, without prejudice to the right of either party to apply for leave to amend their respective pleadings, with a view to a trial and submission of the action in accordance with the views expressed in this opinion.