## WILLIAM DENNIS *vs.* WILLIAM CLARK.

If a legitimate infant child, a member of his father's household, and too young to be capable of rendering any service to his father, is wounded, or otherwise injured, by a third person, or by a mischievous animal owned by a third person, under such circumstances as give the child himself an action against such person, for the personal injury, and the father is thereby necessarily put to trouble and expense in the care and cure of the child, he may maintain an action against such person for an indemnity.

THIS was an action on the case, to recover for the damages sustained by the plaintiff, by reason of an injury caused by the defendant's mare (alleged to be vicious and accustomed to kick) to the plaintiff's minor son ; in consequence of which the plaintiff was put to great expense, costs and charges, and he and his family subjected to great bodily and mental suffering. In one count of his writ, the plaintiff also claimed damages for the personal injury and sufferings sustained by the minor in consequence of the injury.

At the trial before *Mellen*, J., in the court of common pleas, it was admitted by the plaintiff, that when the injury occurred, the minor was too young to be capable of render-

ing him any service, and that he was not entitled to recover for the personal injury and sufferings of the child. But the plaintiff claimed to recover for the expenses incurred by him, by reason of the injury, and for his own trouble, and for the medical attendance and nursing of the child, which thereby became necessary.

The judge being of opinion, and so deciding, that the only ground upon which the action could be maintained, was the plaintiff's loss of the services of his child, which, it was admitted, did not exist in the present case, the plaintiff thereupon became nonsuit, and alleged exceptions.

*B. F. Cooke*, for the plaintiff, admitted that the authorities were mostly against the right of the plaintiff to recover; the loss of service, in such case, being considered as the only ground of action. In the case of *Hall* v. *Hollander*, 4 B. & C. 660, in which the plaintiff brought his action for the loss of service of his son, in consequence of an injury inflicted upon him by the defendant, and also for expenses incurred by the plaintiff, in the care and cure of the child, and it appeared, that the child was too young to be capable of rendering the plaintiff any valuable service, and that the expenses were voluntarily incurred, the court held, that the action could not be maintained; but one of the judges intimated, that such an action as the present might perhaps be sustained. In the case of *Hartfield* v. *Roper*, 21 Wend. 615, where the plaintiff was a child two years old, and the action was brought for an injury done to him by a traveller on a public highway, it was held, that, in order to entitle the plaintiff to recover, the injury must be voluntary, or arise from culpable negligence; and, in delivering the opinion of the court, Cowen, J., said : " Nor could the father have brought an action for loss of service, in respect to so small a child, according to the English case of *Hall* v. *Hollander*, 4 B. & C. 660, though I should think it quite questionable whether that case can be aw here."

*W. Gaston*, for the defendant, referred to the cases of *Dean* v. *Peel*, 5 East, 45 ; *Bennett* v. *Allcott*, 2 T. R. 166 ; *Satter-*

*thwaite* v. *Dewhurst,* 4 Doug. 315; *Weedon* v. *Timbrell,* 5 T. R. 360; *Wilt* v. *Vickers,* 8 Watts, 232.

METCALF, J. The question raised by these exceptions is, whether the owner of an animal, known by him to be mischievous, is answerable to the father of a child who is too young to render him any service, for an injury done to the child by such animal, whereby the father is obliged to expend money in the cure of the child. As a general rule of law, such owner is answerable for injuries done by such animal; and if the defendant's mare, in consequence of his omission to restrain her, had injured the plaintiff's ox or dog, the plaintiff might have maintained an action for the injury. And it is properly admitted by the defendant's counsel, that the plaintiff's child might maintain an action for the injury alleged to have been done to him. But it is contended, that the plaintiff cannot recover, in this action, because the gist of such action is the loss of service; that the loss of service must be alleged in the declaration and proved at the trial; and that, for want of this allegation, and by reason of the admitted fact, that the child was incapable of rendering service to the plaintiff, the action cannot be supported. The first four cases, cited to sustain these positions, relate to actions by a parent for the seduction of a daughter. And it is doubtless true, that those actions are founded on the relation of master and servant, and not upon that of parent and child, and have always been maintained, not upon the seduction itself, but upon the consequent loss of the daughter's service, in which the parent is supposed to have a legal interest. If there is no loss of service, he cannot maintain an action, although he has been obliged to expend money in the support of the daughter during the confinement and sickness caused by the seduction. *Carr* v. *Clarke,* 2 Chit. R. 260; *Satterthwaite* v. *Dewhurst,* 4 Doug. 315; *Grinnell* v. *Wells,* 8 Scott N. R. 741, and 7 Man. & Grang. 1033; *Eager* v. *Grimwood,* 1 Welsb. Hurlst. & Gord. 61. But it is equally true, that the loss of service is not the measure of damages, in such actions; that the legal gravamen is not the real gravamen; and that the loss of service is a

fiction resorted to for the purpose of giving compensation for the actual injury. 3 Bl. Com. 143, Christian's note; 3 Stephen's Com. 540; Holt N. P. 453, note; 2 Selw. N. P. (11th ed.) 1115 – 1117 ; 2 Wend. 461 ; 1 Halst. 325. It is also to be remembered, that, in cases of seduction, the daughter is partaker of the crime, so that she cannot maintain an action against her seducer; *Paul* v. *Frazier*, 3 Mass. 71 ; and that she is always of such an age as to be capable of rendering service to her parent. The decisions, therefore, in that class of cases, are not decisive against the plaintiff's right to maintain the present action.

The last case, cited by the defendant's counsel, (8 Watts, 232,) states the doctrine concerning actions brought by a master for other injuries done to his servant, as it is laid down in all the books, ancient and modern. See 20 H. 7, 5 ; 2 Reeves's Hist. of English Law, 45, 46 ; *Pooley* v. *Osburn*, cited in 5 Co. 108, and 10 Co. 130 ; 1 Bl. Com. 429. In *Mary's Case*, 9 Co. 113, which is most frequently referred to on this subject, it is said : " If my servant is beat, the master shall not have an action for this battery, unless the battery is so great that by reason thereof he loses the service of his servant, but the servant himself, for every small battery, shall have an action ; and the reason of the difference is, that the master has not any damage by the personal beating of his servant, but by means of a *per quod*, viz., *per quod servitium, &c., amisit ;* so that the original act is not the cause of his action, but the consequent upon it, viz., the loss of his service, is the cause of his action ; for be the battery greater or less, if the master doth not lose the service of his servant, he shall not have an action." This doctrine, we have no doubt, applies to actions brought by a parent for injuries to his child, when such actions are brought for the loss of the child's service ; because, in such cases, the right of action is founded on the relation of master and servant, and not on the relation of parent and child. It is stated in some of the modern books, that a father cannot maintain an action for a battery on his child, unless he avers and proves a loss of service. See

1 Wooddeson, 451; 1 Chit. Pl. (6th Amer. ed.) 69, 70; 3 Stephen's Com. 540; Reeve Dom. Rel. 291. But the authorities there cited do not support this broad position. They go no further than the rule stated by lord Coke, in *Mary's Case*, and applied in actions for seduction. And it is manifest that this rule does not necessarily include a case like the present. The rule presupposes, that the person who is beaten is capable of rendering service to the person who brings the action; and the reason of the rule is, that the personal injury to the servant is not a ground of action for the master. That reason is wholly inapplicable to the case now before us, which is an action to recover the expenses which the plaintiff has been obliged to incur in consequence of the injury sustained by his child.

There are very few cases in the English books, which bear directly on the precise point now to be decided. We find, in the court of exchequer, the case of *Wotton* v. *Hunt*, T. Ray. 259, in which the plaintiff alleged that the defendant thrust a person upon the plaintiff's son, "an infant under the age of discretion, by means whereof his thigh bone was broke, and the infant was so hurt that it was despaired of his life, and the plaintiff was enforced to expend great labor and divers sums of money to cure him." After verdict for the plaintiff, the defendant moved in arrest of judgment. Barons Mountague and Atkins overruled the motion, and judgment was given for the plaintiff. Sir Thomas Raymond, who was, at the time of the decision (1679), on the bench of the court of exchequer, or court of common pleas, has expressed his opinion, in his report of the case, that the action ought not to have been sustained, " it not being laid *per quod servitium amisit;* but the child himself ought to have brought the action."

In *Hall* v. *Hollander*, 7 Dowl. & Ryl. 133, a father brought an action for an injury done to his son by driving a chaise against him, by means whereof he was sick during the space of six months, "during all which time," (the declaration alleged,) "the plaintiff lost and was deprived of the service

of. his said son and servant, and was also thereby forced and obliged to pay, lay out and expend a large sum of money, in and about endeavoring to procure his said son and servant to be cured," &c. At the trial, it appeared that the plaintiff's son was only two and a half years old; and there was no evidence that he was capable of performing any service for his father. It also appeared, that the son was carried to a hospital, where he might have been maintained and cured without any expense to the father; but that the father removed the son to his (the father's) house, and voluntarily incurred the expense which he sought to recover of the defendant. The court of king's bench, in 1825, held, that the action, as brought, could not be maintained. But Bayley, J., said, " I am certainly not prepared to say, that a declaration might not be framed, in which the father being averred to be under an obligation to maintain the child, and having no means of providing medical assistance, he necessarily incurred expense in and about his cure, so as to enable him to recover." *S. C:* 4 Barn. & Cres. 660. Since this intimation was made, several English writers have supposed that an action, framed conformably thereto, would be sustained by the English courts. 2 Harrison & Edwards's Nisi Prius, 976, note (*h*); 2 Walford on Parties, 1068, 1082 – 1084; 2 Harrison's Digest, (Philad. ed. 1846,) 3282. But in the case of *Grinnell* v. *Wells*, already cited to another point, decided by the court of common pleas, in 1844, there are suggestions by Tindal, C. J., which seem to indicate at least a doubt whether such action could be maintained.

Whatever the English law may be on this subject, we are of opinion, that, by our law, a father may maintain an action like the present. By the common law of Massachusetts, and without reference to any statute, a father, if of sufficient ability, is as much bound to support and provide for his infant children, in sickness and in health, as a husband is bound, by the same law and by the common law of England, to support and provide for his wife. 2 Mass. 115, 419. Now, it is clearly the law of England, as well as of this common-

wealth, that if a husband desert his wife, or wrongfully expel her from his house, and make no provision for her support, a person who furnishes her with necessary supplies may compel the husband, by an action at law, to pay for such supplies. And our law is the same, we have no doubt, in the case of a father who deserts or wrongfully discards his infant children. In England, however, the liability of a father, in such case, is matter of doubt, depending, it seems, upon another question, equally doubtful; namely, whether he is bound, by the common law, to maintain his infant children. *Urmston* v. *Newcomen*, 6 Nev. & Man. 454, and 4 Adolph. & Ellis, 899. That was an action against a father to recover pay for boarding, clothing, &c., his infant daughter. The court held, upon the facts of the case, that the father was not liable to the action. But they declined to give an opinion upon "the general question, whether, by the common law, a parent is bound to maintain his deserted legitimate child." Coleridge J., said that his opinion was, that a parent was not so bound 6 Nev. & Man. 466. Neither of the other judges intimated an opinion on the question. See Cro. Eliz. 849; O. Bridgm. 257; 4 East, 84; 6 Mees. & Welsb. 488; 9 Car. & P. 497.

But a husband, in England, as well as here, may maintain an action for a personal injury done to his wife, whereby he sustains loss and is obliged to incur expense in her cure. The declaration, in such action, generally avers, as the precedents show, his loss of her society, or her services, or both, and also the expense necessarily incurred by him in consequence of the injury inflicted upon her. But there may be cases of injury to a wife, where the husband thereby loses neither her services nor her society, and yet may be obliged to pay money for care and attendance upon her while she is suffering under the injury done to her by a third person. The husband may be in India, and the wife on her voyage to join him. If, on the voyage, she is mistreated or injured, so as to require medical or other assistance, which cannot be obtained gratuitously, we cannot doubt the husband's liability to pay for it, nor his right to recover an indemnity from the guilty party. On

30*

the same ground, we hold, that where an infant child is injured by a wrong-doer, and the father, in consequence thereof, necessarily incurs expense in procuring attendance upon the child, he may recover an indemnity, although he has not lost the services of the child, because of the child's incapacity to render him any service.

The precise point, and the only one, which we decide, is this : If a legitimate infant child, a member of his father's household, and too young to be capable of rendering any service to his father, is wounded or otherwise injured by a third person, or by a mischievous animal owned by a third person, under such circumstances as give the child himself an action against such person, for the personal injury, and the father is thereby necessarily put to trouble and expense in the care and cure of the child, he may maintain an action against such person for an indemnity.

In *Durden v. Barnett,* 7 Alab. 169, it was decided, that a father might maintain an action for an injury done to his child engaged in his service, against the owner of a dog permitted to run at large after the owner knew him to be accustomed to bite persons. And the court said, " even if the child was of very tender years, so as to be incapable of rendering any useful services, the action would doubtless lie, if averments were made of consequential injury by expenses caused in healing the wounds."

The case of *Anthony* v. *Slaid,* 11 Met. 290, is not at variance with the present decision. In that case, it was decided, that a person, who had made a contract to support all the paupers of a town, in sickness and health, for a specified time and for a fixed price, could not maintain an action against one who had beaten one of the paupers, and thereby increased the expense of supporting him. The damage to the plaintiff was held to be too remote and indirect. But the distinction between that case and this is indicated in the opinion there given. The court say, " It is not by means of any natural or legal relation between the plaintiff and the party injured, that the plaintiff sustains any loss, but by means of the special

contract by which he had undertaken to support the town paupers." In the present case, the loss, which the plaintiff alleges that he has sustained, is the effect of a relation to his child, which is both natural and legal.

*Nonsuit taken off, and new trial granted.*