## JACOB L. BROWN v. DOUGLAS LUMBER COMPANY and Others.[1]

### December 23, 1910.

### Nos. 16,726—(63).[2]

**Question for the jury.**

    Whether defendants Bell & Co. were, as independent contractors, solely responsible to plaintiff for injury sustained while in their employ, was in this case a question for the jury.

[1]Reported in 129 N. W. 161.    [2]October, 1910, term calendar.

[Note] Liability of master to employees of contractor for unsafe appliances or place of labor, see note in 26 L.R.A. 524.

**Degree of care required in guarding dangerous machinery.**

> The degree of diligence required of the owner of dangerous machinery, in guarding it as provided by statute, is greater than is ordinarily required of a master to see that machinery and appliances furnished by him are free from defects.

**Error to admit evidence.**

> Where the issue is whether one has absolved himself from liability by turning over control of a mill or factory to an independent contractor, it is error to permit evidence that prior to the making of the contract the owner had taken out employer's liability insurance.

**Submission of specific questions to jury.**

> When the trial court in its discretion directs the jury, in addition to the general verdict, to answer specific questions, the jurors are not at liberty to disregard such direction.

**Experiments in presence of jury.**

> Permitting experiments in the presence of the jury rests in the sound discretion of the trial court.

**Review of court rulings.**

> Several minor rulings considered.

Action in the district court for Beltrami county against defendant lumber company and the partners in the firm of Bell & Company to recover $10,000 for personal injuries. The facts are stated in the opinion. The negligence alleged in the complaint was a failure to guard properly the dangerous machinery and the absence of the guides therefrom. The case was tried before Stanton, J., and a jury which returned a verdict in favor of plaintiff for $3,500. From an order denying defendant Douglas Lumber Company's motion for judgment notwithstanding the verdict, or for a new trial, it appealed. Reversed as to appellant and new trial directed as to it.

*Marshall W. Spooner* and *P. J. McLaughlin,* for appellant.

*E. E. McDonald, John L. Brown,* and *Charles W. Scrutchins,* for respondent.

O'BRIEN, J.

Douglas Lumber Company owns a lath mill at Bemidji, in this state. On February 12, 1907, it entered into a contract with T. W.

Bell, embodied in a written proposal from him to the company, the material portions of which were the following:

* * * "I will take your lath mill located on Lake Irving, Bemidji, Minn., in its present condition, and will manufacture lath for you in a good workmanlike manner and in accordance with your instructions for the sum of seventy (70) cents per thousand, tied in bundles of fifty in a bundle. * * * I agree to employ experienced men on the bolter and lath machines in the mill, a competent licensed engineer during the day, and a reliable man as night watchman. I am to pay the man on the pond, all of the men in the mill, both upstairs and downstairs, including the engineer and night watchman. You are to pay for putting the bolts in the pond, and for taking the lath, edgings, and sawdust away from the mill. * * * I agree to do my millwright work at noon and nights, when the mill is shut down, so that the mill may run steady for five hours at a time without stopping for anything. I agree to run the mill ten hours daily commencing Monday, February 18, 1907. If you desire to run the mill day and night during the summer months, I agree to do the work by contract, on the same basis per thousand as for making lath during the daytime. You are to pay me each Saturday for all lath manufactured up to the previous night. This contract is for one year from February 18, 1907, to February 18, 1908. Should your mill burn down, or should anything happen to put it out of commission for a period of sixty days or longer, then at your option this contract shall terminate and become null and void, by your giving me written notice to that effect. In case the mill is closed down, you are to pay me at the rate of $3.00 per day, and I am to do whatever work you may designate." * * *

One of the machines in the mill was a bolter used for making a preliminary reduction in the material to be sawed into laths. There were seven circular saws upon this machine, about one and one-half inches apart. It was supplied with rollers, and one man fed the timber into the machine through the rollers against the saws, and another received the separated pieces at the rear. Beneath the bolter was a chute, into which fell the sawdust and pieces of boards and edgings. If, as occasionally happened, this material accummulated and clogged

up the chute, the action of the saws would hurl with great force such pieces of wood as came in contact with them. To protect those using the machine, planks had been fastened in the front and rear ends of the bolter, extending from the floor to the table or surface. As originally constructed, guides were placed between the saws, the object of which apparently was to hold the lumber in place, and, as claimed, to keep the saws from "wobbling." They had been removed; the result being to leave a somewhat larger opening in the table, and permitting perhaps a greater quantity of material to fall through and into the chute beneath.

Plaintiff, under employment of defendants Bell & Co., was engaged as the receiver or rear man upon this machine, and was injured by being struck by a piece of board hurled by the saws as described. There was an aperture in the planking guarding the rear end of the machine, caused by the removal of a board. The evidence did not show how long this defective condition of the guard had existed prior to the accident; but it had continued for some days. The negligence alleged in the complaint was a failure to properly guard and the absence of the guides. Plaintiff had a verdict against both defendants. Douglas Lumber Company appeals from an order denying its alternative motion.

1. Appellant contends it is entitled to judgment, upon the ground that plaintiff was in the employ of W. T. Bell & Co., independent contractors, that appellant owed no duty to plaintiff, and is in no way responsible for any injury he sustained. It is apparent this court should not direct judgment, unless the relation of the parties claimed by appellant is conclusively established by the terms of the written contract. Cruikshank v. St. Paul F. & M. Ins. Co., 75 Minn. 266, 77 N. W. 958. We do not think the contract goes to the extent claimed.

Appellant's business was the manufacture of lath. In the course of carrying on this activity it made the contract with Bell, which provided the means for performance of a part of its business. Bell undertook this by the use of certain instrumentalities, which appellant was to and did furnish. The manner of using the mill was to some extent at least under appellant's control. There was evidence

that at least some supervision was exercised by appellant's officers, and, taken in connection with the contract itself, we think the responsibility of appellant was for the jury. Barg v. Bousfield, 65 Minn. 355, 68 N. W. 45; Rait v. New England F. & C. Co., 66 Minn. 76, 68 N. W. 729. These cases are easily distinguished from Aldritt v. Gillette-Herzog Mnfg. Co., 85 Minn. 206, 88 N. W. 741. In that case full control of the manner and means of performance was in the one held to be an independent contractor.

2. As said, plaintiff alleged, and offered evidence to establish, two negligent acts: (1) Failure to guard dangerous machinery; (2) a defective machine, because of the absence of guides. The first, if true, was a neglect of the statutory duty to guard, and defendant's duty in that respect was absolute, as declared in a long line of decisions of this court. Glockner v. Hardwood Mnfg. Co., 109 Minn. 30, 122 N. W. 465, 123 N. W. 807. Given a dangerous machine, which it is practical to guard, the inquiry as to the master's negligence ends when a failure to guard is shown. But this is not true as to a mere defect in an instrumentality, which is the most that can be claimed because of the absence of the guides. Their absence may have rendered the machine more dangerous, by permitting more and larger pieces to fall beneath the table; but this was a question of degree in the dangerous character of the machine. The liability of defendants for an injury occasioned by such condition is to be determined by the ordinary rules governing the use of defective appliances. In such case the sound judgment and degree of care exercised by the person furnishing the machine become important factors and must be considered by the jury. Monsen v. Crane, 99 Minn. 186, 108 N. W. 933.

When instructing the jury the learned trial judge said: "I wish to say to you that the fact, if such appears to you from the evidence, that it was the custom of the defendants and other millmen to guard machines of this type in a certain manner is immaterial in this case, and could be no excuse for failure on the part of the defendants to properly and sufficiently guard this machine, and it is immaterial whether this machine was or was not manufactured with a guard. And if the bolting machine was, in the condition in which it

existed at the time of this injury, in fact dangerous because of the absence of an adequate and sufficient guard at the rear of said machine, or because no guides were provided thereon, which guards and guides it was practicable to provide, the plaintiff can recover in this action, although the defendants could not have reasonably anticipated injury to a person in the precise way in which this injury actually occurred."

This instruction, while correctly stating the law as to guards required by the statute, imposed upon defendants an unwarranted strict rule with reference to the guides between the saws. An examination of the entire charge is convincing that the distinction between defendants' duty to guard the machine and their negligence in operating it without the guides was ignored throughout. Because of this there must be a new trial of the action.

3. It is also proper, in view of another trial, to indicate our views upon other features of the case. On January 28, 1907, fifteen days prior to the date of the contract between the defendants, Douglas Lumber Company procured an employer's liability policy of insurance. When the accident to plaintiff occurred, appellant reported the fact, and certain correspondence resulted, the most important being a letter from appellant, in which was the following: " * * * For your information, we wish to advise you that the payroll of T. W. Bell, contractor, is included in our policies with you, and we are therefore looking to you for the protection guaranteed under the policies. By referring to your letter to us dated December 17, 1906, you will notice that our lath mill payroll is estimated at $7,000, which is just about the amount we are paying Mr. Bell, contractor, for doing the work for us. It was the understanding, at the time your Mr. Hazard was here, that our policies covered all employees in our mill, no matter whether they worked for us direct or worked for a contractor, inasmuch as the estimated payroll of $7,000 included both our own men and the men employed by the contractor. Please advise us by return mail what action you wish us to take in case any claim is made on us for damages in the J. L. Brown case; also whether we are fully protected, as we believe we are, under our present policies with you."

Over objection, the policy and correspondence were placed in evidence by plaintiff as a declaration against interest, and tending to show that appellant considered itself liable for plaintiff's injuries. A very similar question was considered in Barg v. Bousfield, supra, and decided in favor of plaintiff's contention. In this case it appears the policy was issued before the contract with Bell was made, and it is difficult to see more in the correspondence than a desire upon appellant's part to insist that the insurance company was liable to it, if in fact appellant was liable to plaintiff. It would seem the same claim could be made against any defendant, reporting an accident to an insurance company upon a claim that, if liability existed, it was covered by the policy. Unless we are prepared to go to that length, and say that in every case where a defendant is insured by a policy of this character the fact may be shown, we fail to see the competency of this testimony. We think the doctrine of the Barg case in this respect should not be extended, and that this evidence should have been excluded.

4. The jury were instructed to answer three specific questions submitted to them. Instead of doing so, the sheet containing the questions was indorsed, "We, the jurors, think our verdict an answer to all these questions." This the foreman signed. The submission of these questions rested in the sound discretion of the court. The indorsement amounted to a statement that in the opinion of the jurors it was unnecessary for them to make any answer. Without discussing the materiality of each question, we do not think the discretion of the jurors should be thus substituted for that of the court. The jurors should have been required either to answer the questions or give some good reason for their inability to do so. Morrow v. St. Paul City Ry. Co., 74 Minn. 480, 77 N. W. 303; Elliott v. Village of Graceville, 76 Minn. 430, 79 N. W. 503; Eischen v. Chicago, M. & St. P. Ry. Co., 81 Minn. 59, 83 N. W. 490.

5. Plaintiff exhibited his physical injuries to the jury, and his counsel and a physician made some experiments upon plaintiff's body to demonstrate the extent of his injuries. This was permissible in the discretion of the court. Adams v. City of Thief River Falls, 84

Minn. 30, 86 N. W. 767; State v. Gardner, 96 Minn. 318, 104 N. W. 971, 2 L.R.A.(N.S.) 49.

6. Some other errors assigned are disposed of by what has already been said. Briefly referring to others, we think the photographs were properly received, that the operation of the machine could be properly described by mechanical experts. Some work was done on the machine after Bell commenced performance of his contract. Appellant should have been permitted to show whether or not it was consulted or took part in the work. Part of a conversation was called out on cross-examination of a witness. On redirect plaintiff was entitled to the whole conversation.

Other assignments relate to the charge; but, with the exception noted, we think the case was properly submitted.

The order appealed from is reversed as to appellant, and a new trial directed as to it.

BROWN, J., took no part.