JACQUELYN EICHTEN, A MINOR, BY VERNON L. EICHTEN, HER FATHER AND NATURAL GUARDIAN, v. CENTRAL MINNESOTA COOPERATIVE POWER ASSOCIATION OF REDWOOD COUNTY, MINNESOTA, AND ANOTHER. VERNON L. EICHTEN v. SAME.[1]

June 20, 1947.

Nos. 34,384, 34,385.

---

[1]Reported in 28 N. W. (2d) 862.

*Ernest E. Watson, S. S. Larson,* and *T. O. Streissguth,* for appellants.

*Freeman & King,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Two actions for negligence, consolidated for trial, arising out of an automobile collision on June 11, 1943, in Redwood county. The trial resulted in a verdict of $40,000 for plaintiff Jacquelyn Eichten, a minor, who was three months old at the time of the accident, and a verdict of $2,500 for her father, plaintiff Vernon L. Eichten. This

is an appeal from an order in each case denying defendants' motion for judgment notwithstanding the verdict or a new trial.

On appeal, defendants contend (1) that plaintiffs failed to establish their negligence, or, if such negligence was established, that it was the proximate cause of the accident; (2) that the verdicts are so excessive as to appear to have been given under the influence of passion and prejudice; (3) that the court erred in denying defendants' motion to declare a mistrial because of the publication of certain newspaper articles and pictures during the trial, hereinafter described, which were read or observed by some of the jurors; (4) that the court erred in refusing to grant a new trial because of misconduct of plaintiffs or their counsel in permitting plaintiff Jacquelyn Eichten to be present in the courtroom during the trial, and in such counsel's reference thereto in his closing arguments; (5) that the court erred in refusing certain instructions requested by defendants and in giving certain instructions to which defendants excepted, hereinafter set forth in detail.

The accident took place at the intersection of two graveled country roads near Wabasso, in Redwood county, about 2:30 p. m. on a clear day. The north-south road is about 16 to 17 feet wide. A knoll or hummock west of this road and for some distance north of the intersection blocks the view of a driver thereon to the right in the direction of the east-west road. The east-west road is about 20 feet wide. Shortly before it reaches the intersection it ascends a grade for some distance, then levels off and goes downgrade before reaching the intersection. The same knoll or hummock above described blocks the vision of a driver on this road to the left in the direction of the north-south road.

Plaintiff Jacquelyn Eichten, then three months old, was riding in the arms of her grandmother, Mrs. Gust Otto, in the rear seat of a two-door sedan, hereinafter called plaintiffs' car, owned by Gust Otto, the father of Ethel Eichten, wife of plaintiff Vernon L. Eichten. The car was being driven by Ethel Eichten. Plaintiffs' car was traveling south on the north-south road, approaching the intersection from the north. A small pick-up truck owned by defendant Central

Minnesota Cooperative Power Association and operated by its employe, defendant Leonard Berberich, hereinafter called defendants' truck, at about the same time was traveling east on the east-west road, approaching the intersection from the west.

Plaintiffs' car entered the intersection first. Its front wheels were up to or across the south line thereof when it was struck near the right rear wheel and fender by the right front portion of defendants' truck. As a result of the impact, Jacquelyn was hurled through the window into the ditch on the east side of the north-south highway beyond the intersection, sustaining severe and permanent injuries as a result. Plaintiffs' car ended upright in the ditch on the same side of the north-south highway a little distance to the south. Defendants' truck was brought to a stop some 200 feet east of the intersection on the right side of the east-west highway.

Berberich testified that prior to the accident, as he approached the highway, his speed was from 30 to 35 miles per hour; that he first noticed plaintiffs' car when he was 70 feet from the intersection; that he then removed his foot from the accelerator, but did not apply his brakes; that he "figured she [Mrs. Eichten] would stop and give me the right of way"; that when he was some 30 feet from the center of the intersection he knew there was going to be a collision, but that he did not then or thereafter apply his brakes; that he could have stopped his truck by the time he reached the northeast corner of the intersection had he applied the brakes.

Mrs. Otto, grandmother of Jacquelyn, who was holding Jacquelyn in the rear seat of plaintiffs' car at the time of the accident, testified that immediately thereafter she asked Berberich, "How come you hit us? Didn't you see us?" to which Berberich replied, "No, we were going too fast." She was otherwise unable to give any definite testimony with reference to the collision. Mrs. Eichten testified that she heard Berberich state to her mother, "Well, I didn't see you; I was going too fast."

Mrs. Eichten, driver of plaintiffs' car testified that her speed as she approached the intersection was about 15 to 25 miles per hour and that she slowed down to about 15 to 18 miles per hour as she

started across it; that she took her foot off the accelerator and applied the brakes lightly as she crossed the same; that about 20 feet north of the intersection she looked to the right; that prior thereto the hummock or knoll west of the north-south road obstructed her view to the right; that when she looked to the right she could see down the east-west highway 70 to 80 feet, but that the downgrade beyond obstructed further vision in that direction; that she did not see defendants' truck until an instant before it struck her car.

On the second day of the trial, in the *Minneapolis Morning Tribune,* a picture of Jacquelyn and her mother appeared, accompanied by a brief news item, which stated in part:

"* * * the child's father is asking $85,000 in two lawsuits. He claims his daughter suffered permanent injuries June 11, 1943, in an automobile collision near Wabasso, Minn. The girl suffered a fractured skull when thrown from car driven by her mother."

The same day two jurors were observed reading the article. Counsel for defendants, upon discovery of this, directed the court's attention to the publicity and to the jurors' reading the same, submitted the news item in evidence, and, based on such proceedings, moved for a mistrial on the ground (1) that the statements of the article did not conform to the facts, in that there was no skull fracture; (2) that the article disclosed the amount of plaintiffs' claim; and (3) that the entire "set-up" was prejudicial to their case.

It was disclosed that the picture was taken in the courtroom during recess without the consent of either counsel for defendants, counsel for plaintiffs, or the presiding judge. The court denied the motion, stating, "I shall caution the jury this case is to be tried on the evidence * * *." Defendants duly excepted to this ruling.

In defendants' motion for a new trial, exception was taken to an additional newspaper article published during the trial, relating to the recovery of a $73,500 verdict in another personal injury action, which had been completed in the same courtroom immediately preceding this case. No reference thereto or motion thereon was made during the trial herein, nor was there any showing made that the

jurors herein had read the same. Counsel for defendants urge, however, that the publication thereof served as a stimulant to a larger verdict in the instant case, and that presumably the article was read by the jurors. It is conceded that plaintiffs' counsel had nothing to do with its publication.

At the close of the testimony, defendants moved for a directed verdict on the issues of negligence, contributory negligence, and proximate cause, contending that the negligence of Mrs. Eichten was the "sole, proximate, independent, superseding, efficient cause of the resulting harm to the plaintiffs, and insulated the negligence of defendants, if any." This motion was denied and the case submitted to the jury upon instructions which will be set forth in detail later herein. The jury returned a verdict of $40,000 for plaintiff Jacquelyn Eichten and $2,500 for plaintiff Vernon L. Eichten.

■ The evidence appears ample to justify the trial court's submission to the jury of the issues of negligence and proximate cause. There is ample evidence to sustain a finding of negligence on the part of defendants. The jury might find such negligence in Berberich's failure to keep a proper lookout and to have his truck under proper control as he approached and crossed the intersection; in his failure to apply the brakes when he found himself in a position of danger; in his failure to yield the right of way after plaintiffs' car had first entered the intersection; in his careless assumption that Mrs. Eichten would stop and give him the right of way when the evidence disclosed that she had entered the intersection first. There is evidence sufficient to sustain a finding of negligence on his part in his admission that he was traveling from 30 to 35 miles per hour as he approached a partially blind intersection; in his admission that he failed to slacken speed beyond the extent of two or three miles per hour and failed to apply his brakes after he had observed plaintiffs' car. The distance traveled by his truck after the impact and his admission after the accident that "We were going too fast" would further sustain a finding in this respect.

M. S. A. § 169.14, subd. 1, provides:

"No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so restricted as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

Subd. 3 of said section provides:

"The driver of any vehicle shall, consistent with the requirements, drive at an appropriate reduced speed when approaching and crossing an intersection * * * and when special hazards exist with respect to * * * traffic or by reason of * * * highway conditions."

It is obvious that a jury might justifiably conclude that at the time of the accident the operator of defendants' truck was guilty of violation of the foregoing statutory regulations and that such violations were the proximate cause of the accident. Guthrie v. Brown, 192 Minn. 434, 256 N. W. 898; Montague v. Loose-Wiles Biscuit Co. 194 Minn. 546, 261 N. W. 188; Nye v. Bach, 196 Minn. 330, 265 N. W. 300; Jeddeloh v. Hockenhull, 219 Minn. 541, 18 N. W. (2d) 582.

■ We do not see any degree of merit in defendants' contention that (1) Mrs. Eichten was guilty of negligence as a matter of law, and (2) that such negligence constituted an independent intervening cause insulating any negligence of defendants. Defendants assert that the trial court erred in denying their motion for directed verdicts based upon such ground. At the outset, it is clear that there was nothing in the conduct of the driver of plaintiffs' car that could be regarded as negligence as a matter of law. The slow rate at which she was traveling; her inability to see farther than 75 feet because of the obstruction caused by the hill; her failure to look, after the first glance, at which time the road to her right appeared clear; and her other conduct at the time of the accident could not be regarded as negligence as a matter of law. Similar questions have been before us on many occasions. In each thereof we have held that under like facts and circumstances this question is one for the jury.

Kraus v. Saffert, 208 Minn. 220, 293 N. W. 253; Norling v. Stempf, 208 Minn. 143, 293 N. W. 250; Jeddeloh v. Hockenhull, *supra*.

Further, if defendants' contentions are correct, it would be necessary for the trial court to instruct the jury not only that Mrs. Eichten was negligent, but that her negligence was an independent intervening cause of the accident insulating any negligence of defendants. There is nothing in the evidence which would justify such a conclusion. In most intersection accident cases, the issue is whether the sole negligence of the defendant or the concurrent negligence of both parties proximately caused the accident. Unless the evidence is conclusive, the determination of this question is for the jury. We have found no case involving an intersection collision where the court as a matter of law has held that the negligence of one of the participants therein insulated the negligence of the other. Defendants cite in support of their contentions Childs v. Standard Oil Co. 149 Minn. 166, 182 N. W. 1000; Goneau v. M. St. P. & S. S. M. Ry. Co. 154 Minn. 1, 191 N. W. 279; Sporna v. Kalina, 184 Minn. 89, 237 N. W. 841, 76 A. L. R. 1280; Peterson v. Fulton, 192 Minn. 360, 256 N. W. 901; Guile v. Greenberg, 192 Minn. 548, 257 N. W. 649; Wedel v. Johnson, 196 Minn. 170, 264 N. W. 689; Medved v. Doolittle, 220 Minn. 352, 19 N. W. (2d) 788. Most of such cases do not involve intersection collisions. In most of them the intervening negligence asserted occurred at a time materially subsequent to the original negligence of the defendant therein. In most of them, nevertheless, the determination of this issue was held to be a question for the jury. In no intersection case was the plaintiff held guilty of independent intervening negligence as a matter of law.

We have held that an intervening cause to break the causal connection and free the original wrongdoer from liability must be one which not only comes between the original cause and injury in point of time, but which also turns aside the natural sequence of events and produces a result which would not otherwise have followed. See, Gillespie v. G. N. Ry. Co. 124 Minn. 1, 144 N. W. 466.

"If the intervening force is one which in ordinary human experience is reasonably to be anticipated, the defendant may be negligent because he failed to guard against it. * * *

"Obviously a defendant cannot be relieved from liability by the materialization of the risk to which he has subjected the plaintiff. Foreseeable intervening forces are within the scope of defendant's original fault." 21 Minn. L. Rev. 38, and cases cited.

In accordance with this doctrine we have held that one is bound to anticipate and provide against what usually happens and what is likely to happen. As stated in Ferraro v. Taylor, 197 Minn. 5, 7, 265 N. W. 829, 831:

"* * * The rule seems to be well established that if the occurrence of the intervening cause might reasonably have been anticipated, such intervening cause will not interrupt the connection between the original cause and the injury."

In Holmberg v. Villaume, 158 Minn. 442, 445, 197 N. W. 849, 850, we expressed the rule as follows:

"* * * he [negligent automobile driver] may be held liable for an accident occurring through the negligent operation of his machine, although the immediate cause of the accident was the negligent act of a third party in the operation of his car, i. e., where a chain of events has been started, due to the negligence of the driver of an automobile, he may be held liable for all mishaps which are properly the proximate result of his unlawful conduct."

The trial court, at defendants' request, did submit this issue to the jury in the following instructions:

"* * * If a person had no reasonable ground to anticipate that a particular act would or might result in an injury to anybody, then, of course, the act would not be negligent at all; but if the act itself is negligent, then the person guilty of it is equally liable for all its natural and proximate consequences, whether he could have foreseen them or not. Otherwise expressed, the law is that if the act is one which the party ought, in the exercise of ordinary care, to have

anticipated was liable to result in injury to others, then he is liable for any injury proximately resulting from it, although he could not have anticipated the particular injury which did happen. Consequences which follow in unbroken sequence, without an intervening efficient cause, from the original negligent act, are natural and proximate; and for such consequences the original wrongdoer is responsible, even though he could not have foreseen the particular results which did follow.

"If from all the evidence in these cases you should find that the injuries sustained by Jacquelyn were not the natural consequence of defendant's behavior, and further find that such injuries would not have resulted therefrom but for the interposition of new and independent causes, then the behavior of defendants would not be a proximate cause and would not be actionable, * * *.

* * * * *

"If from all the evidence you should find the evidence equally consistent with two hypotheses, that is that the injuries to Baby Jacquelyn were caused by the negligence of defendants or may have been caused by the sole negligence of Mrs. Eichten, then plaintiffs have failed to sustain their burden of proof, and your verdicts will be for the defendants.

"If from all the evidence in these cases you should find that Mrs. Eichten was negligent, and her negligence was the sole, proximate cause of the injury sustained by Baby Jacquelyn, your verdict must be for the defendants.

* * * * *

"* * * If you find that there was no negligence on the part of the defendant Berberich, your verdict would be for the defendants. If you find that there was any negligence on the part of defendant Berberich, and you should further find that his negligence was not the proximate or direct cause of this accident, or that Mrs. Eichten's negligence was an efficient and intervening cause of this accident, then in that event your verdict would be for the defendant."

Under the foregoing instructions, the questions of plaintiffs' negligence and defendants' negligence and the issue of proximate cause

were properly submitted to the jury. The facts outlined above would not justify the direction of verdicts on any such issues. We find no error in the court's denial of defendants' motions for directed verdicts or for judgment notwithstanding the verdicts, on the grounds that (1) Mrs. Eichten was negligent as a matter of law; (2) that such negligence insulated the negligence, if any, of defendants; and (3) constituted the sole proximate cause of the accident.

■ Defendants assert that a verdict of $40,000 for Jacquelyn and $2,500 for her father are so excessive as to indicate the presence of passion and prejudice sufficient to justify new trials. Plaintiffs submitted the testimony of four medical experts with reference to Jacquelyn's injuries. Counsel for defendants had available the testimony of two additional medical experts, who examined her at defendants' request. They were not called by defendants. Defendants' counsel, in his closing argument to the jury, stated: "We have no criticism of the medical experts who testified for plaintiffs here, particularly Dr. Mike Henry. Dr. Henry is one of our very best orthopedists." From the foregoing, it would appear that the medical testimony is undisputed.

Such testimony clearly established that as a result of the accident Jacquelyn suffered the laceration of a portion of her brain which destroyed certain nerve cells therein which do not replace themselves; that certain nerve cells on the left side of the brain were destroyed and replaced by scar tissue; that such injury damaged the left optic nerve, extending from the brain, resulting in the almost total permanent loss of useful vision of the left eye; that the sixth nerve extending from the brain was damaged so that paralysis thereof followed, making it impossible for Jacquelyn to move the left eye outward or to look to the left with it, a result described as paralytic convergent strabismus, otherwise known as "cross-eye"; that the abdominal reflexes on the right side are gone, indicating an injury to the left side of the brain; that the tendon of the right leg was shortened so that the heel cannot be brought down to the floor; that there was a contracture, necessitating walking on the ball of the right foot; that this impairment of function of the right leg followed an

injury in the nerve supply to the leg and not in the leg itself; that there is a paralysis in the hamstring muscles of the right leg; that there is no function or control therein; that the leg is not receiving the normal nerve impulses, and Jacquelyn will be unable to use it normally; that the right leg is not growing as fast as the other; that when full growth is attained the right leg will be shorter than the left by as much as several inches; that at present there is a 75 percent loss of use in the right leg; and that such condition will be permanent.

Medical testimony further disclosed that an operation might to some extent correct the disfigurement caused by the paralysis of the sixth optic nerve resulting in the paralytic convergent strabismus, but that such disfigurement could not be completely corrected thereby; that the most that could be accomplished would be the centering of the left eyeball, without more than a slight ability to rotate to the left; that the right knee and leg could be stiffened by an operation so that it would not drag as at present, but that such an operation would leave the leg rigid and would require its movement without bending at the knee or otherwise; that a steel brace prescribed for the right leg is "to keep the knee from bending so far backward that the bones would become deformed"; that in the absence of surgery, it will be necessary for Jacquelyn to wear a brace throughout her lifetime; that regardless of such corrective measures she will have a permanent limp.

The X rays did not indicate or disclose a skull fracture. With reference thereto, however, the undisputed medical testimony established that there may be a brain injury without a skull fracture; that a brain injury without skull fracture causes more serious after-effects than one with skull fracture; that the fracture in the skull releases the increased intercranial pressure; that there may be a severe skull fracture without a brain injury—so that whether a skull is fractured or not is of little consequence in diagnosing a case involving brain injury.

The child at the time of the accident was three months old, had had a normal birth, and was suffering no disability. Her eyes were

straight, and the use of both limbs was normal. As a result of the accident, she will suffer a disfigurement of the eyes for the rest of her life. She has lost permanently the entire useful vision of her left eye. When her full growth is reached, her right leg will be several inches shorter than the left. She will be required either to wear a brace throughout her life or to submit to an operation to stiffen her entire leg. She will have a permanent limp. She still has many years of life ahead of her, throughout which she will have to bear the burden of the foregoing disabilities. Under the circumstances, we do not feel that a verdict of $40,000 is so excessive as to indicate the presence of passion and prejudice. Awards approximating this one, where the injuries were not as severe and where the person affected was not at the threshhold of life, as in the instant case, have frequently been authorized. See, Cole v. C. St. P. M. & O. Ry. Co. (D. C.) 59 F. Supp. 443; Garedpy v. C. M. St. P. & P. R. Co. 176 Minn. 331, 223 N. W. 605; *Id.* 178 Minn. 620, 226 N. W. 943; Moquin v. M. St. P. & S. S. M. Ry. Co. 181 Minn. 56, 231 N. W. 829; Odegard v. Connolly, 211 Minn. 342, 1 N. W. (2d) 137. Further, we may take judicial notice that at the present time there is a material decrease in the purchasing power of the dollar. Kerzie v. Rodine, 216 Minn. 44, 11 N. W. (2d) 771; Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327.

All such factors must be given their proper weight in arriving at a conclusion. We recognize them and the seriousness of the injuries involved. We hold that the verdict for Jacquelyn Eichten is not excessive.

■ Likewise, the verdict of $2,500 returned in favor of Vernon L. Eichten, father of the injured child, does not appear to be excessive. To date, the medical expenses have been $635.50. The evidence disclosed that additional medical services will be required at least throughout the minority of the child. She is under instructions to report regularly to her attending specialist. At least one, and perhaps several, operations may be attempted to straighten her eye. At most, such an operation will be only partially corrective insofar as the position of the eyeball is concerned; it will not affect or

restore the vision. An estimate of the cost thereof, including hospitalization, was set at $500. An operation to the injured right leg may be of some assistance in preventing further deformation of the bones thereof. It will leave the leg rigid or stiff. If not operated on, new braces will be required approximately every two years as the leg grows. The reasonable value of these braces is $75 each. The operation described, with attendant hospitalization, will cost between $500 and $700.

In addition to the medical expenses, the special damage must include the loss of services to which the parent is entitled during minority. It is true that in view of the age of the child the evidence with reference thereto must be indirect, hypothetical, and to some extent speculative. This does not prevent a jury from forming an estimate thereof and including an allowance therefor in its verdict. Netherland-Am. S. N. Co. v. Hollander (2 Cir.) 59 F. 417; Dennis v. Clark, 56 Mass. (Cush.) 347, 48 Am. D. 671; Trow v. Thomas, 70 Vt. 580, 41 A. 652; 19 Minn. L. Rev. 251. We hold that the verdict of $2,500 in favor of Vernon L. Eichten is not so excessive as to indicate passion and prejudice and that it should be permitted to stand.

■ Defendants assert that the publication of the newspaper article above referred to and its examination by some of the jurors were prejudicial to the extent of depriving them of a fair trial. The general rule applicable with reference to a situation of this kind is set forth in Ceylon Farmers Elev. Co. v. Fidelity & Deposit Co. 163 Minn. 280, 287, 203 N. W. 985, 988, as follows:

"* * * The plaintiff and its counsel are exonerated from any connection with the publication. It was purely a newspaper item. We cannot presume prejudice from such publication. There is no showing that it had any effect upon the jury and an examination of the entire record would readily lead to the conclusion that the jury, in recognition of its duty, was lead [sic] to its conclusion exclusively by the evidence in the case. Appellant's contention in this respect is without merit."

While the practice of publishing news items containing inaccurate or misleading reports of trial proceedings, which find their way into the hands of the jurors sitting therein, may, if prejudice results therefrom, be the proper basis for the declaration of a mistrial or the award of a new trial after verdict, such prejudice cannot be presumed. Here, there are many factors that indicate that no prejudice resulted from the articles in question. The picture of the child with the brace certainly failed to give to the jury any different impression from that gathered from observing her in the courtroom, where she was present without objection and where she had every right to be. Reference to the amount sought in recovery did not inform or mislead the jury, since counsel for plaintiffs in his final argument made statements substantially to the same effect. Therein he referred in detail to the amount sued for and gave his opinion as to what would be a proper verdict with reference thereto. No cases which prohibit such a practice are cited by defendants in their brief herein. It would seem to be in accord with principles of common sense that a plaintiff may inform the jury of the amount of his claim, just as it is proper for a defendant to inform the jury that no loss had been sustained, or that the actual loss was substantially less than that claimed by plaintiff, or what in defendant's opinion would be a fair estimate thereof. Tuttle v. Wicklund, 178 Minn. 353, 227 N. W. 203; Shockman v. Union Transfer Co. 220 Minn. 334, 19 N. W. (2d) 812.

In the last analysis, it is the function of the trial court to caution the jury that the opinion of counsel in such matters is not evidence; that the jury must determine damages for disability upon the evidence presented at the trial. This was done in the instant case. After the motion for mistrial was first made, the trial court advised counsel that it would caution the jury to determine the case on the evidence, and subsequently it instructed the jury as follows:

"* * * It is for you to say what the testimony in this case is; you should determine that from what you have heard from the witnesses on the witness stand and from the exhibits which have been received in evidence. And from this testimony it is for you to de-

termine what the facts in this case are, where the truth in this controversy lies. You should not take as true any statement made by either counsel for the defendants or counsel for the plaintiffs unless such statement coincides with your recollection of the testimony as you remember it; * * *.

*　　*　　*　　*　　*

"* * * I am not going to attempt to discuss this medical testimony with you, you have heard it and know what it is as well as I do, and it is your province to determine what the facts are in this case, as I said before.

*　　*　　*　　*　　*

"Counsel in his argument has made some suggestions as to what he thought was a proper verdict for you to bring in here. I must caution you at this time that simply reflects his opinion, and it should be so regarded by you. Nor are you to be influenced by the amount he has asked for in his complaint. Nor are you to be influenced by the amount that has been asked for in the father's complaint in behalf of the daughter. After all, you are the sole judges of what this is to be. You will give to counsel's statement on this other matter such weight as you think it is entitled to."

See, Hinman v. Gould, 205 Minn. 377, 286 N. W. 364.

■ The statement in the news article that the child had suffered a skull fracture was no doubt based upon allegations of the complaint. The medical testimony established without dispute that there was a brain injury and that a brain injury might occur with or without a skull fracture. It further established that if it occurred without a skull fracture it was of more serious consequence and more dangerous than if accompanied by one. We do not see, therefore, how the statement in the news article could have injured defendants, particularly in view of the fact that, as above indicated, the jury was instructed by the court to base its determination of damages for injuries exclusively upon the evidence, including the medical testimony.

Under the foregoing circumstances and in view of the instructions given, it would appear that the publication of the newspaper article

was not prejudicial to the extent of requiring a new trial. All references therein were otherwise brought to the attention of the jury, and, if improper, were eliminated by the trial court's instructions to disregard the same. The determination of this question was largely within the discretion of the trial court. The parties, witnesses, and jurors were all before it. The incidents complained of took place in its presence or in or near the courtroom. The trial court was better qualified to determine the effect thereof than is this court. We have before us only the record. Therefrom we cannot see that prejudice has resulted from these incidents, or that the trial court abused its discretion in denying defendants' motions with respect thereto.

■ With reference to the newspaper article relative to the preceding trial and the verdict returned therein, the same principles are applicable and the same conclusion must result. There is nothing in the record to indicate that such articles were read by the jury, or that objection was made thereto, or that counsel for plaintiffs had any knowledge thereof or connection therewith. There is nothing upon which we could hold that prejudice may have resulted therefrom.

■ It is claimed that the presence in court of plaintiff Jacquelyn Eichten and her counsel's comment to the jury that "You saw her hobbling around, * * *. Maybe you don't call it hobbling—whatever it struck you as being. That is the condition of the leg. You saw it with the brace; you saw it without the brace," constituted misconduct requiring the granting of a new trial. As previously stated, her presence in the courtroom was unobjected to by counsel for defendants, and we are aware of no rule or principle which would require her exclusion. Indeed, it might be the subject of suspicion were she not present to demonstrate at the request of either party the extent of her disabilities, since it was within the discretion of the court to require her to make such a demonstration to the jury. Hatfield v. St. Paul & D. R. Co. 33 Minn. 130, 22 N. W. 176, 53 Am. R. 14; Adams v. City of Thief River Falls, 84 Minn. 30, 86 N. W. 767; Brown v. Douglas Lbr. Co. 113 Minn. 67, 129 N. W. 161. That counsel did not choose this method in preference to the more

accurate medical testimony submitted should not be the subject of criticism. Reference was made to her presence in the courtroom by Dr. Grant. The limit of counsel's reference thereto was merely that the jury had seen her hobbling around the courtroom with the brace on and with the brace off. Since the undisputed medical testimony was to the effect that the child would have a permanent limp; that one leg was not growing as fast as the other and would ultimately be shorter than the other; and that the brace had been procured to prevent further deformity of the bones, there was nothing in counsel's statement that was not otherwise properly in evidence by undisputed medical testimony. We do not feel that this one slight reference should constitute misconduct sufficient to justify the granting of a new trial. Hammel v. Feigh, 143 Minn. 115, 173 N. W. 570; Hoch v. Byram, 180 Minn. 298, 230 N. W. 823.

■ It is further contended that in his argument to the jury plaintiffs' counsel exceeded the bounds of propriety by appeals to the passions and sympathy of the jury. No specific exceptions or objections were taken thereto at the trial or in the motion for a new trial. On appeal, it is indicated that the statements objected to for the most part were references to the permanent nature of the disability, the youth of the child, the impossibility of restoring her lost vision, and the handicaps she must suffer throughout her life. There is no indication that any statement made was not fully supported by evidence. Further, counsel specifically stated in his argument:

"* * * don't get any idea that we are asking for any sympathy; as I told you before and as Mr. Watson told you, that has no place in a court of law. All we want you to do is conscientiously consider the facts."

Likewise, the trial court in its instructions to the jury stated:

"So I ask you to take this case without passion or sympathy, without bias or prejudice, and without fear or favor try this case on the evidence as you have heard it here in this court, and do justice to these parties."

Under all such circumstances, we do not feel that there has been a showing of misconduct of counsel sufficient to justify a new trial.

Defendants charge as error the failure of the trial court to give instructions VI, VIII, IX, XII, XVIII, and XIX requested by them. We have examined such requested instructions and the instructions actually given by the court. We feel therefrom that the instructions given were inclusive of all proper instructions requested by defendants. For brevity in demonstrating this, the requested instructions are hereinafter compared with the instructions given by the court, as follows:

Requested instruction VI:

"VI. * * * the driver of defendants' vehicle had the right to assume, until observation indicated the contrary, that anyone approaching from the north would yield the right of way to him."

Court's instruction on this issue:

"Each of these drivers, Leonard Berberich and Mrs. Ethel Eichten, had a right to anticipate or presume that the other would observe all the rules of the road and the statutes of this state regulating the operation of motor vehicles * * *.

\* \* \* \* \*

"* * * If the vehicle on the right is traveling at a lawful speed, it is the duty of the driver on the left to yield the right of way to the vehicle on the right under this statute; that is where both vehicles are approaching or entering the intersection at approximately the same time. Which car actually entered the intersection first is without legal significance in determining the right of way if it appears that the vehicles approached or entered the intersection at approximately the same time; if they did, why the vehicle on the right would have the right of way under these instructions. However, if the car which Mrs. Eichten was driving had already entered the intersection and defendant was approaching it, it was the duty of the defendant to yield the right of way to her."

Requested instructions VIII and IX:

"VIII. * * * If from all the evidence the jury should find that the behavior of Mrs. Eichten in driving her car was a predominant superseding cause of the injury to Baby Jacquelyn, then such behavior on her part insulates the negligence, if any, of the defendants and your verdicts must be for defendants.

"IX. * * * If from all the evidence the jury should find that the behavior of Mrs. Eichten in operating her car brought about the alleged injuries to Baby Jacquelyn, different in any form that [than] would have otherwise resulted from the defendants' negligence, if any, your verdict must be for defendants."

Court's instructions on this issue:

"If from all the evidence in these cases you should find that the injuries sustained by Jacquelyn were not the natural consequence of defendant's behavior, and further find that such injuries would not have resulted therefrom but for the interposition of new and independent causes, then the behavior of defendants would not be a proximate cause and would not be actionable, * * *.

\* \* \* \* \*

"If from all the evidence you should find the evidence equally consistent with two hypotheses, that is that the injuries to Baby Jacquelyn were caused by the negligence of defendants or may have been caused by the sole negligence of Mrs. Eichten, then plaintiffs have failed to sustain their burden of proof, and your verdicts will be for the defendants.

"If from all the evidence in these cases you should find that Mrs. Eichten was negligent, and her negligence was the sole, proximate cause of the injury sustained by Baby Jacquelyn, your verdict must be for the defendants.

\* \* \* \* \*

"\* \* \* If you find that there was any negligence on the part of defendant Berberich, and you should further find that his negligence was not the proximate or direct cause of this accident, or that Mrs. Eichten's negligence was an efficient and intervening cause of this accident, then in that event your verdict would be for the defendant."

Requested instruction XII:

"XII. * * * If from all the evidence in the cases you should find that Mrs. Eichten saw, or ought to have seen the defendants' vehicle in time to have avoided a collision therewith, and could have done so by the exercise of reasonable care, then her behavior would be the sole proximate cause of Baby Jacquelyn's injuries, and your verdict must be for defendants in each of these cases."

Court's instruction on this issue:

"* * * The statute does not warrant drivers in taking close chances. If the driver of an automobile approaching an intersection sees a vehicle approaching at a fast rate of speed, so that there is reasonable danger of a collision if both proceed, then it is his or her duty to exercise due care so as to avoid a collision."

Requested instruction XVIII:

"XVIII. * * * There is no evidence in these cases justifying this jury in making any allowance to either plaintiff for future nursing or similar care for the infant plaintiff."

Court's instruction on this issue:

"* * * There is no evidence that any nurse attendance will be required in the future for this child, and so the jury would not be justified in making any allowance to the plaintiff for any future nursing or similar care for Jacquelyn Eichten."

Requested instruction XIX:

"XIX. * * * There is no evidence in these cases justifying this jury in making any allowance to plaintiff Vernon Eichten for loss of earnings during his daughter's minority."

Court's instruction on this issue:

"Under the law of this state, the father is entitled to the services of his child until such child reaches her majority. And if you find that the value of Jacquelyn's service to her father has been diminished by the injuries she received in this accident, then her father would be entitled to the diminished value of the services up to the

arrival of the age of majority of the minor. You have a right to take into consideration these rules in determining what damages you will allow in each of these cases, if you find the plaintiff is entitled to recover damages."

See, Netherland-Am. S. N. Co. v. Hollander (2 Cir.) 59 F. 417; Dennis v. Clark, 56 Mass. (Cush.) 347, 48 Am. D. 671; Trow v. Thomas, 70 Vt. 580, 41 A. 652; 19 Minn. L. Rev. 251.

Under the above authorities cited, we are of the opinion that the instructions given by the court were substantially those properly requested by defendants.

Affirmed.

